WILKINSON, Circuit Judge,
dissenting:
Deangelo Whiteside was properly designated a career offender in the course of his federal sentencing proceedings. Now, years later, the majority vacates that sentence. In invalidating Whiteside’s sentence, the majority creates a circuit split over whether career-offender designations are cognizable on collateral review, and ignores settled law as to whether changes in circuit precedent can reset the statute of limitations for post-conviction review of federal criminal proceedings.
The majority opinion represents a dramatic expansion of federal collateral review that is unsupported by law or precedent. It makes a shambles of the retroactivity doctrines that have long safeguarded the basic finality of criminal convictions. It disrupts the orderly administration of our criminal-justice system.
If it were purely a matter of orderly administration, that might be an arid basis on which to deny relief. But there was no injustice done here. Whiteside pled guilty to possession with intent to distribute at least 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1), and his two predi *557 cate felony drug offenses plainly qualified him for career-offender status under U.S.S.G. § 4B1.1, a status to which White-side did not object.
None of these convictions has ever been invalidated. No procedural or substantive irregularity ever marked the plea or sentencing proceedings. In short, Whiteside was sentenced according to the law as it existed at that time. Absent a constitutional violation or miscarriage of justice, neither of which is remotely present here, that is all a criminal defendant can ask or expect. Moreover, the defendant must raise the petition in a timely manner, which Whiteside has failed to do.
My colleagues attempt a basic restructuring of the purposes of collateral review in not one, but two, respects. It is bad enough that the majority envisions collateral proceedings as a form of error correction intended, not so subtly, to supplant direct review. The comparative question the majority poses is even worse. It inquires whether yesterday’s result was the same that would or should obtain today. To the contrary, collateral review is what its name implies: whether the proceedings under review conformed to law as it instructed at the time. If they did, the rule of law was honored and upheld, and further inquiry is impermissible.
Because any other disposition of this case would open concededly lawful proceedings to endless and untimely collateral attack, I would affirm the district court’s dismissal of the petition. For the reasons set forth below, I respectfully dissent.
I.
The majority opinion creates a square circuit conflict over whether allegedly erroneous career-offender designations in particular, and what Sentencing Guidelines errors in general, are cognizable on a 28 U.S.C. § 2255 petition for collateral review. On one side are the opinions of the Seventh and Eighth Circuits holding challenges to career-offender designations not cognizable. See Hawkins v. United States, 706 F.3d 820, 823 (7th Cir.2013), supplemented on denial of reh’g, 724 F.3d 915 (7th Cir.2013), cert. denied, — U.S. —, 134 S.Ct. 1280, 188 L.Ed.2d 299 (2014); Sun Bear v. United States, 644 F.3d 700, 705-06 (8th Cir.2011) (en banc). On the other side are my colleagues in the majority and, until recently, an opinion in the Eleventh Circuit, see Spencer v. United States, 727 F.3d 1076, 1088-89 (11th Cir.2013), vacated pending reh’g en banc, (11th Cir. Mar. 7, 2014) (No. 10-10676). As I see this dispute as both a primary and threshold issue, I shall address it first.
Like traditional habeas corpus, § 2255 “does not encompass all claimed errors in conviction and sentencing.” United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). A trial error that is neither constitutional nor jurisdictional is cognizable under § 2255 only if it constitutes “a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.” Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Courts have consistently reaffirmed this principle since Hill. See, e.g., Brecht v. Abrahamson, 507 U.S. 619, 634 n. 8, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); United States v. Timmreck, 441 U.S. 780, 783-84, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir.1999).
As neither Whiteside nor the majority claims that the district court lacked jurisdiction when it sentenced him as a career offender, Whiteside’s claim is only cognizable if it alleges a constitutional error or a fundamental defect resulting in a miscar *558 riage of justice. Whiteside can satisfy neither of these requirements.
A.
The heart of collateral review is the correction of constitutional error. In fact, a certificate of appealability, which is necessary to appeal from a district court’s final order in a § 2255 proceeding, requires the petitioner to make “a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). Whiteside has made no “substantial showing” of the denial of a “constitutional right.” And even if he had made such a showing, he could not possibly prevail on the merits of his claim.
The only colorable constitutional claim even plausibly available to Whiteside is that he was denied due process in violation of the Fifth Amendment. But there was no denial of due process here. There is no claim of procedural irregularity occurring at any point in these proceedings. While the sentencing regime in force at the time of Whiteside’s sentencing was later overturned in United States v. Simmons, 649 F.3d 237, 241 (4th Cir.2011) (en banc), nothing in that case suggests that White-side’s sentence failed to comply with the law in force at the time the sentence was imposed. The method for analyzing predicate state-court convictions applied in Whitside’s case had been affirmed by numerous panels of this court. See, e.g., United States v. Harp, 406 F.3d 242, 246 (4th Cir.2005); United States v. Jones, 195 F.3d 205, 207 (4th Cir.1999). Indeed, the case that overturned the rule in force at the time of Whiteside’s sentencing did not occur until August 2011, well after White-side’s own case was finalized in August 2010.
I thus cannot embrace the paradox that a manifestly lawful criminal proceeding amounts to an unlawful deprivation of due process. Lawful one day, unlawful the next — it makes no sense. The doctrinal hook for Whiteside’s due process challenge, the Supreme Court’s decision in Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), provides no support for his claim. In Hicks, the jury imposed a mandatory-minimum 40-year sentence after being instructed that it was required to do so in light of the petitioner’s two prior state convictions. Later, the Oklahoma Court of Criminal Appeals declared the mandatory-minimum law unconstitutional but refused to vacate the petitioner’s sentence. The Supreme Court reversed, finding that the petitioner’s due process rights were violated when the jury’s discretion to sentence below the mandatory-minimum 40-year term was improperly limited, even though the sentence imposed was beneath the statutory maximum. See Hicks, 447 U.S. at 344-46, 100 S.Ct. 2227.
Hicks differs markedly from this case: the Hicks jury was barred from exercising its full sentencing discretion, whereas the district court here not only recognized that it had discretion to depart from the Guidelines range, but in fact did so when it sentenced Whiteside to a below-Guidelines sentence. This distinction makes all the difference. Whiteside was entitled to a sentence somewhere between the statutory minimum and maximum, imposed after the Guidelines range was properly calculated in accordance with the law that existed at the time. This he received, and thus there is no violation of any sort anywhere to be found.
But even if Hicks could be bent and stretched to support Whiteside’s due process claim, it would still be procedurally unavailable to him. Under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), a court may not apply a new rule of constitutional criminal proce *559 dure on habeas except in two narrow and infrequent instances: where the rule places conduct outside the scope of criminal sanction, see Saffle v. Parks, 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), or constitutes a “ “watershed rule[ ] of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding,” id. at 495, 110 S.Ct. 1257 (quoting Teague, 489 U.S. at 311, 109 S.Ct. 1060 (plurality opinion)); see also United States v. Martinez, 139 F.3d 412, 416 (4th Cir.1998) (holding that Teague applies to § 2255 petitions).
Teague insisted, then, that retroactivity doctrine not succumb to a severe case of presentism, where a decision later in time not only becomes the law, but seeks to discredit all that went before. Thus, a rule is new for Teague purposes if it was not “dictated by precedent existing at the time the defendant’s conviction became final.” Graham v. Collins, 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (quoting Teague, 489 U.S. at 301, 109 S.Ct. 1060) (emphasis and internal quotation marks omitted). A novel “application of an old rule in a manner that was not dictated by precedent” counts as a new rule for Teague purposes. Stringer v. Black, 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).
Because Hicks does not apply at all to Whiteside’s situation, let alone squarely address it, Whiteside’s attempt to extend Hicks would require us to announce and retroactively apply a new rule of constitutional criminal procedure on collateral review: namely that a criminal defendant has a constitutional right to an amended sentence based on later decisional law that calls into question an advisory Guidelines calculation manifestly correct at the time it was imposed. This case is thus very different from Miller v. United States, in which we held that, under the retroactivity principles announced in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), Simmons was a substantive rule and thus applied retroactively where the petitioner’s § 2255 petition alleged actual innocence of a conviction for firearm possession by a felon. 735 F.3d 141, 145-47 (4th Cir.2013). Here, by contrast, Whiteside asks us to announce a novel due process rule that is completely distinct from Simmons itself.
Furthermore, Whiteside’s proposed new rule would not fit in either of the Teague exceptions. It does not place any conduct outside the reach of the criminal law. Nor does it present the exceedingly rare case of a “watershed rule of criminal procedure,” since the procedural rule that Whiteside wants us to announce is not “implicit in the concept of ordered liberty.” Teague, 489 U.S. at 311, 109 S.Ct. 1060 (quoting Mackey v. United States, 401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part)) (internal quotation marks omitted). Thus, Teague forbids the constitutional relief that Whiteside seeks.
Seeking to avoid Teague’s restrictions, the majority tries to hang its constitutional case on Simmons itself and issue the certificate of appealability on that basis. See Maj. Op. at 555 & n. 15. But Simmons, even if declared retroactive by Miller, is a case about statutory interpretation— namely the interpretation of federal sentencing law — not the Constitution. Given that Hicks is far afield and that any rule derived obliquely from it cannot possibly be made retroactive under Teague, White-side has no constitutional claim and no entitlement to a certificate of appealability.
B.
Given that Whiteside has no available constitutional claim, the majority must *560 show that, in light of Simmons, his sentence is marred by a fundamental defect that resulted in a miscarriage of justice. This it cannot do. Although some questions of federal law are cognizable on § 2255, advisory Guidelines determinations are not except in the most extraordinary of circumstances. This is not such a case, and underlying the majority’s attempt to find Whiteside’s claim cognizable are three serious and pervasive errors.
First, the majority refuses to recognize that, after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), errors in calculating Guidelines ranges are “less serious” than they were previously because the ranges are no longer binding on sentencing judges. Hawkins, 706 F.3d at 824. The situation might be different if the Guidelines were still mandatory. But those who fought for so long to escape the binding strictures of Guidelines sentences cannot now complain that just because they influence sentencing behavior they must be treated as binding law. Far from binding, they may not even be presumed reasonable. See Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The majority today refuses to respect the major tradeoff of the post-Booker regime: now that the Guidelines are merely advisory, they lack the force of binding law at the sentencing phase and thus the ability to activate collateral review. As Justice Sutherland observed, if laws are not “upheld when they pinch as well as when they comfort, they may as well be abandoned.” Home Bldg. & Loan Ass’n v. Blaisdell, 290 U.S. 398, 483, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting). The majority disregards this honored maxim and seeks to have it both ways.
That the Guidelines are advisory is no mere theoretical point; on remand, the district court will be perfectly free to impose the exact same sentence on White-side. It is notable that the district court granted Whiteside only a limited downward departure for substantial assistance, a departure that was itself broadly discretionary. See United States v. Pearce, 191 F.3d 488, 492 (4th Cir.1999). From a recommended Guidelines range of 262 to 327 months, the district court departed by less than 20 percent from the bottom of the Guidelines range. The district court could have departed downward significantly more but did not, strongly suggesting that it viewed Whiteside’s criminal record as serious and the Guidelines range as generally appropriate.
The scenarios spun by the majority on what might or might not happen on resen-tencing are nothing more than rank speculation. The majority suggests that the district court would likely be unable to satisfy 18 U.S.C. § 3553’s sentencing factors and “rigorous review under Gall on direct appeal” if it departed by 20 percent above the top of the newly calculated Guidelines range of 140 to 175 months and imposed an identical sentence of 210 months. Maj. Op. at 552. Quite apart from this bald attempt to put the hammer to the district court, such speculation ignores the “broad sentencing discretion” afforded trial judges, Alleyne v. United States, — U.S.—, 133 S.Ct. 2151, 2163, 186 L.Ed.2d 314 (2013), and the lengthy criminal record described in Whiteside’s presentencing report that will be available for consideration on resentencing. White-side’s record includes, but is not limited to, 10 controlled-substances offenses, 7 counts of assault with a deadly weapon on a government officer, and additional counts of assault, hit and run, and resisting a public officer — convictions that Simmons does nothing to undermine. This lengthy record is impossible to minimize, since, quite independently of the career-offender designation, Whiteside’s extensive criminal *561 history caused the presentencing report to recommend a criminal-history category of V. Thus, the assumption underlying the majority’s ruling — that but for the career-offender enhancement Whiteside could have shaved years and years off his sentence — is highly questionable.
Second, the majority argues that, because the Guidelines still exert a substantial influence on sentencing, career-offender designations are serious enough to be cognizable on collateral review. No one could deny that the Guidelines are still influential even after Booker. Mere influence on the ultimate sentence, however, is insufficient to warrant correction under § 2255. See, e.g., Daniels v. United States, 532 U.S. 374, 376, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001) (holding that § 2255 cannot generally be used to challenge predicate convictions under the Armed Career Criminal Act of 1984); Addonizio, 442 U.S. at 190, 99 S.Ct. 2235 (holding that § 2255 is unavailable to prisoner seeking resentencing when post-sentencing changes in parole release-date calculations allegedly increased effective sentence beyond that which original sentencing judge intended); Mikalajunas, 186 F.3d at 496 (holding that erroneous sentencing enhancement for restraint of victim was “ordinary misapplication of the [Guidelines] that does not amount to a miscarriage of justice”).
The majority never explains how the reality of error correction customarily reserved for direct appeal is to be reconciled with the broad scope it now proposes for § 2255 review. Nor can it, since there is no clear line to differentiate why this Guidelines calculation is open to collateral attack and others are not. The majority apparently believes that career-offender designations are “far from ordinary” and should be subject to challenge, Maj. Op. at 552, but why stop there? I cannot fathom. The majority offers no basis in law for its ruling, and the main reason given is that a career-offender designation results in a substantially larger prison term and “casts the defendant as a hopeless recidivist worthy of the strictest possible punishment.” Id. It is left to the reader to divine why the application of such a penalty constitutes “extraordinary circumstances” justifying collateral review. United States v. Pregent, 190 F.3d 279, 283 (4th Cir.1999). Every Guidelines calculation may affect the sentencing range to a greater or lesser degree, and the majority does not even hint at a non-arbitrary dividing line. Instead of a legal principle, all we get is the majority’s pronunciamento along with the irrelevant observation that Congress, as it had every right to do, outlined the contours of the career-offender enhancement for those whose extensive history of lawbreaking posed a continuing social threat. See Maj. Op. at 552.
Finally, the majority confuses a change in law favorable to a defendant with a fundamental breakdown in procedure or justice. As explained above, Whiteside’s sentence was imposed properly, with no procedural irregularities or substantive errors. Thus, to hold that Whiteside’s situation warrants § 2255 relief implies that every change in law creates a manifest injustice no matter how lawful the prior proceeding. But “[precedential decisions come pouring out of the federal courts of appeals and the Supreme Court.” Hawkins, 706 F.3d at 824. This ebb and flow of decisional law seldom implicates the fundamental canons of justice. See Teague, 489 U.S. at 313, 109 S.Ct. 1060 (noting that, because procedures falling under Teague’s second exception are “so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge”).
*562 Rather than fundamental recastings of the foundations of justice, most changes in law represent close and contestable questions on which capable jurists can reasonably disagree. Simmons is a case in point. The Simmons panel, which incidentally included a former Supreme Court Justice, held that Carachuri-Rosendo v. Holder, 560 U.S. 563, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010), the basis for the en banc majority’s decision, did not “compel[ ] a different result” from the Harp regime for analyzing predicate state-court convictions. United States v. Simmons, 635 F.3d 140, 142 (4th Cir.2011), rev’d en banc, 649 F.3d 237 (4th Cir.2011). The en banc decision featured opposing views, ably and earnestly advanced. Compare Simmons, 649 F.3d at 239 (Motz, J.), with, id. at 250 (Duncan, J., dissenting), and id. (Agee, J., dissenting). To say now that those on the losing side of the debate were party to some “miscarriage of justice” requiring collateral relief, Hill, 368 U.S. at 428, 82 S.Ct. 468, disserves those whom I know my friends in the majority hold in the highest esteem.
To further say that a criminal defendant lawfully sentenced prior to Simmons was the victim of some manifest injustice is to adopt a naively Whig history of law as an unbroken march toward progress and enlightenment, when in truth it is more often a matter of fits and starts, of limitless gray areas, all bereft of the guarantee that later attempts to reconcile public safety with human liberty will necessarily be better than earlier ones. The majority’s approach to retroactivity also ignores the analogous reality that plea bargains are contracts under which, in exchange for avoiding the uncertainties of trial, the defendant “assumes the risk of future changes in circumstances in light of which [his] bargain may prove to have been a bad one.” United States v. Bownes, 405 F.3d 634, 636 (7th Cir.2005). This assumed risk includes the forfeiture of later advantageous legal developments. To say that a later change in law should automatically make a plea agreement or, as here, a lawful prior proceeding invalid is to render law provisional and judgment advisory, good only until the inevitable next round.
Once we recognize that a favorable change in law does not automatically render prior lawfully imposed sentences unjust, it becomes clear why collateral review is a poor forum for correcting sentencing errors. Unlike with ineffective-assistance-of-counsel claims, sentencing issues can usually, even if not always, be effectively fixed on direct appeal. The majority’s invocation of the “rigor” with which appellate courts review sentences on direct appeal only supports this point. Maj. Op. at 553-54; see also id. at 552. It does nothing to undermine a “basic distinction between direct review and collateral review”: that “an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.” Addonizio, 442 U.S. at 184, 99 S.Ct. 2235.
C.
In addition to being conceptually unsound, the majority’s holding that White-side’s claim is cognizable under § 2255 leads it to misread Supreme Court precedent and run roughshod over our own.
The Supreme Court cases upon which the majority and Whiteside rely are in another room. In Peugh v. United States, the Court held that the Ex Post Facto Clause forbids a district court from using Sentencing Guidelines promulgated after the original offense to sentence a defendant if the later Guidelines increase the recommended sentencing range. — U.S. —, 133 S.Ct. 2072, 2084, 186 L.Ed.2d 84 (2013). But Peugh is readily distinguishable. First, it deals with constitutional *563 error. Second, it deals with direct appeal. The standard for ex post facto challenges articulated in a case like Peugh — that the change in law create merely “a ‘significant risk’ of a higher sentence,” Peugh, 133 S.Ct. at 2088 — is substantially less demanding than the requirement of a fundamental defect leading to a miscarriage of justice for collateral attack on non-constitutional errors. And third, there is no indication that the Supreme Court intended Peugh’s holding to apply retroactively to already-final sentences such as Whiteside’s. See Hawkins, 724 F.3d at 916-18.
Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005), similarly fails to support Whiteside’s position. Johnson dealt with § 2255’s one-year statute of limitations. There, the Supreme Court stated that it shared the petitioner’s “preliminary assumption that if he filed his § 2255 motion in time, he is entitled to federal resentencing now that the State has vacated one of the judgments supporting his enhanced sentence.” Id. at 302-03, 125 S.Ct. 1571. This assumption was irrelevant to the disposition of the case, however, since the Court held that the § 2255 petition at issue was time-barred. Id. at 311, 125 S.Ct. 1571. Furthermore, the assumption was made in the context of the vacatur of predicate state convictions; here, there is no question that Whiteside’s state convictions are still valid and that the district court could, would, and should consider them on resentencing.
Finally Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), is inapposite to this case. In Davis, the Supreme Court held that § 2255 could be used to challenge a conviction when an intervening change in law rendered the act upon which the conviction was based one “that the law does not make criminal.” 417 U.S. at 346, 94 S.Ct. 2298. Davis held: “There can be no room for doubt that such a circumstance ‘inherently results in a complete miscarriage of justice’ and ‘pres-entís] exceptional circumstances’ that justify collateral relief under § 2255.” Id. at 346-47, 94 S.Ct. 2298 (alteration in original). But nothing in Davis suggests that its holding should extend to cases where, as here, the intervening change in law did not undermine the underlying convictions. The difference is one of night and day. To say as the majority does that “this case does not present exactly the kind of error” at issue in Davis is an understatement, to put it mildly. Maj. Op. at 552.
If the majority opinion distorts Supreme Court precedent, it tramples our own. Whiteside states that “[d]eciding this case requires the Court to break new ground in this Circuit,” a euphemistic way of inviting us to disregard our prior precedent. Appellant’s Reply Br. at 27.
Sadly, the invitation has been accepted. We held in United States v. Pregent, “Marring extraordinary circumstances ..., an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding.” 190 F.3d at 283-84; see also United States v. Goines, 357 F.3d 469, 477 (4th Cir.2004) (“[Guidelines] claims ordinarily are not cognizable in § 2255 proceedings.”); Mikalajunas, 186 F.3d at 496 (“[A] misapplication of the [Sentencing Guidelines] typically does not constitute a miscarriage of justice.”). These cases all came from the era in which the Sentencing Guidelines were virtually mandatory. Their teachings are all the more compelling in the present advisory Guidelines period. For if Guidelines calculations were not cognizable on collateral review in their all-but-mandatory form pri- or to Booker, they certainly cannot be cognizable in their new advisory status.
Moreover, the holdings in the above cases stem from the fact that § 2255 is designed for “cases in which ‘the sentence *564 was in excess of the maximum authorized by law.’ ” Pregent, 190 F.3d at 284 (quoting 28 U.S.C. § 2255(a)). Here, however, Whiteside’s career-offender designation did not increase his statutory maximum. As Judge King recognized in United, States v. Powell, because career-offender designations do not lead to “sentences exceeding the applicable statutory maximum,” they are thus not challengeable under § 2255. 691 F.3d 554, 563 n. 2 (4th Cir.2012) (King, J., dissenting in part and concurring in the judgment in part).
Similarly, in United States v. Pettiford, 612 F.3d 270 (4th Cir.2010), we ruled that there was no miscarriage of justice, and thus no remedy available under § 2255, for a prisoner challenging his career-offender sentence when two of the underlying predicate convictions had been vacated but the career-offender designation was still supported by the remaining convictions. In that case, as here, the district court could have imposed an identical sentence following vacatur. Thus, there was “no evidence that [the petitioner’s] sentencing was constitutionally defective or flawed in a fundamental way.” Pettiford, 612 F.3d at 278.
II.
In addition to being non-cognizable, Whiteside’s claim for relief is time-barred. 28 U.S.C. § 2255(f) provides for a one-year statute of limitations that is triggered by one of four conditions, whichever occurs latest:
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2255(f)(l)-(4).
A.
Whiteside contends that his claim fits under (f)(4), and that United States v. Simmons, 649 F.3d 237 (4th Cir.2011) (en banc), qualified as a new “fact” for purposes of that provision. Whiteside’s suit is timely under this theory, since he filed less than a year after Simmons was handed down. Although the majority does not adopt Whiteside’s statutory argument, an explanation of the statutory scheme is still necessary to illustrate the many ways in which the majority’s equitable holding negates it.
Whiteside grounds his argument on the Supreme Court’s decision in Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005). In Johnson, the defendant’s sentence in the original proceeding was enhanced on the basis of a state conviction which was later vacated. Following vacatur, Johnson sought federal post-conviction relief, contending that his enhanced sentence was no longer valid. Johnson’s conviction had become final more than a year before his § 2255 petition was filed, but the Court concluded that the vacatur qualified as a new fact for purposes of (f)(4). See Johnson, 544 U.S. at 300-02, 125 S.Ct. 1571. As the Court noted:
We commonly speak of the “fact of a prior conviction,” and an order vacating a predicate conviction is spoken of as a *565 fact just as sensibly as the order entering it. In either case, a claim of such a fact is subject to proof or disproof like any other factual issue.
Id. at 306-07,125 S.Ct. 1571 (citation omitted).
Johnson does not govern Whiteside’s claim. Simmons represented a change of law, not fact. The circuits to have considered this type of issue have uniformly reached the same conclusion. See, e.g., Phillips v. United States, 734 F.3d 573, 580 (6th Cir.2013); Sanchez v. United States, 318 Fed.Appx. 801, 804 & n. 6 (11th Cir.2009) (unpublished per curiam); Lo v. Endicott, 506 F.3d 572, 575 (7th Cir.2007); E.J.R.E. v. United States, 453 F.3d 1094, 1098 (8th Cir.2006); Shannon v. Newland, 410 F.3d 1083, 1088-89 (9th Cir.2005); see also Minter v. Beck, 230 F.3d 663, 666 (4th Cir.2000) (rejecting, in a similar context, defendant’s attempt to invoke a change in law outside (f)(3)).
Contrary to the vacatur at issue in Johnson, Simmons did not directly alter Whiteside’s legal status as a prior state offender. See Lo, 506 F.3d at 575. A conviction is a fact for sentencing purposes, but a relevant legal rule is not. Simmons, “unlike a predicate conviction, is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved.” E.J.R.E., 453 F.3d at 1098. This point is illustrated by the simple observation that “[w]e would never ... ask a jury to decide whether a judicial decision had indeed changed [the] law in the relevant way, nor would the parties introduce evidence on the question.” Shannon, 410 F.3d at 1089. Indeed, if this change in law is a “fact,” then what would not be?
Instead of altering the factual landscape, Simmons merely announced a generally applicable legal rule. But a decision “establishing an abstract proposition of law arguably helpful to the petitioner’s claim does not constitute the ‘factual predicate’ for that claim.” Id. Decisions that update the legal significance of certain facts without modifying them do not qualify under (f)(4). Simmons did precisely this: unlike a vacatur decision, it altered the legal significance of Whiteside’s prior convictions without amending the convictions themselves. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir.2000) (“Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.”); see also United States v. Pollard, 416 F.3d 48, 55 (D.C.Cir.2005).
Whiteside’s (f)(4) argument fails for the additional reason that it would effectively nullify (f)(3), which provides for tolling in instances where the defendant’s claim is founded on a right “newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.” 28 U.S.C. § 2255(f)(3). As the Eighth Circuit has reasoned:
[The specific criteria enumerated in (f)(3) for tolling the limitations period] impliedly reject[] the notion that the creation of a new right by the Supreme Court that is not made retroactive to cases on collateral review, other rulings of law by the Supreme Court, and decisions taken from the courts of appeal in all instances, could trigger any of the limitations periods enumerated under § 2255.
E.J.R.E., 453 F.3d at 1098.
If changes in law are cognizable under (f)(4), then (f)(3) becomes superfluous because any claim brought under (f)(3) could also be brought under (f)(4). See Lo, 506 F.3d at 575. “To suggest, as [the petitioner] does, that any decision by any court on any issue could constitute a ‘factual predicate’ would swallow up the specifically delineated limitations in” (f)(3). Id. at 576. These considerations indicate that “subse *566 quent interpretations of the law can be the basis of delay in filing a § 2255 motion only in accordance with” (f)(3) — not (f)(4). Sun Bear v. United States, 644 F.3d 700, 702 n. 5 (8th Cir.2011) (en banc) (internal quotation marks omitted). Notably, Whiteside does not even attempt to argue that his claim satisfies the requirements specified in (f)(3).
B.
Recognizing the speciousness of his statutory argument, Whiteside asserts in the alternative — in an argument embraced by the majority — that the statute of limitations should be equitably tolled. Equitable tolling of petitions for collateral review is available only when a defendant demonstrates “(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.” Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks omitted). Under this court’s precedent, equitable tolling is appropriate in those “rare instances where — due to circumstances external to the party’s own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result.” Rouse v. Lee, 339 F.3d 238, 246 (4th Cir.2003) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000)) (internal quotation marks omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir.2004).
Whiteside claims that he was prevented from timely filing by the unfavorable precedent that would have governed his claim had he sued prior to Simmons. The standard announced in Holland, however, focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant’s control prevented him from filing within the limitations period at all. See Shannon, 410 F.3d at 1090. Although Simmons plainly made a collateral attack on Whiteside’s sentence more plausible, nothing prevented Whiteside from filing his petition within the one-year statute of limitations. See E.J.R.E., 453 F.3d at 1098.
This court’s decision in Minter v. Beck confirms this line of reasoning. In that case, as here, the defendant’s claim originally seemed foreclosed by extant precedent. After the issuance of a favorable decision, however, he sought to collaterally attack his sentence, invoking a provision equivalent to (f)(2). Minter contended that the newly issued decision, by nullifying the unfavorable precedent that had previously barred his claim, served to remove an “impediment” to filing. After rejecting this argument, the court held that equitable tolling was inappropriate. Minter, 230 F.3d at 666-67. The court reasoned that unfavorable precedent may have rendered a timely claim unsuccessful, but did not actually bar Minter from making the attempt. As the court observed, “futility ... is not a valid justification for filing an untimely” petition. Id. at 666. Nothing in Holland undermines this central holding. The majority’s Orwellian declaration that Minter establishes a “bright-line rule” that must be applied on a “case-by-case basis” is contradictory at best, and scornful of precedent at worst. Maj. Op. at 547.
Tellingly, Whiteside makes no allegation that he was unable to file in a timely fashion — only that doing so would probably have been unsuccessful in light of extant case law. Indeed, any such allegation would be frivolous given the many defendants who filed suits prior to Simmons asserting the exact same substantive claim that Whiteside now raises, including of course Simmons himself. See, e.g., United *567 States v. Brandon, 376 Fed.Appx. 343 (4th Cir.2010) (unpublished per curiam); United States v. Summers, 361 Fed.Appx. 539 (4th Cir.2010) (unpublished per curiam); United States v. Simmons, 340 Fed.Appx. 141 (4th Cir.2009) (unpublished per curiam), vacated, - U.S. -, 130 S.Ct. 3455, 177 L.Ed.2d 1048 (2010). These claims were not entirely meritless even under then-existing precedent: the Supreme Court’s decision in Carachuri-Rosendo v. Holder, 560 U.S. 563, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010), and the Sixth Circuit’s opinion in United States v. Pruitt, 545 F.3d 416 (6th Cir.2008), both strongly foreshadowed Simmons. Equitable tolling should not be applied where, as here, the only impediment to timely filing was the discouragement felt by the petitioner on calculating his odds of success.
Furthermore, Whiteside has failed to demonstrate that “gross injustice” would result should this court deny his request for equitable tolling and find his claim time-barred. See Green v. Johnson, 515 F.3d 290, 304 (4th Cir.2008) (internal quotation marks omitted). As explained above and contrary to the majority’s assertion, see Maj. Op. at 551, Whiteside’s petition for collateral relief fails on the merits for the simple reason that the claimed sentencing error involved nothing more than a miscalculation of the advisory Guidelines range. Despite Whiteside’s contentions to the contrary, this type of error does not represent “a fundamental defect which inherently results in a complete miscarriage of justice.” Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). For similar reasons, a dismissal of Whiteside’s claims on procedural grounds also falls short of constituting a “gross injustice.”
Finally, as several circuits have noted, it is quite improper to use the doctrine of equitable tolling to circumvent the express limitations contained in § 2255. See, e.g., Lo, 506 F.3d at 576. Equitable tolling is instead intended to address obstacles to filing not otherwise governed by the statutory provisions. Owens, 235 F.3d at 360. In this case, Whiteside’s statutory and equitable arguments both stem from the change in law precipitated by Simmons. Changes in law are governed by (f)(3), which lays out a set of requirements that Whiteside fails to satisfy. To permit White-side to “succeed on this recharacterized argument” would thus “usurp the eongres-sionally mandated limits on habeas petitions.” Lo, 506 F.3d at 576.
In this case, Simmons came down roughly a year after Whiteside’s conviction became final. That may seem a short time to the majority, but its equitable reasoning applies equally to a long history of three, five, or even ten years, or whenever a change in circuit decisional law or Guidelines interpretation may appear. This sort of reasoning makes a mockery of Congress’s desire to have post-conviction petitions filed when the evidence is not stale or missing altogether.
III.
It has often been noted that one of the casualties of expanded collateral review is the finality of criminal convictions. The majority pays the kind of lip service to this value that is typical when a principle is about to be disregarded. See Maj. Op. at 554. In the majority’s eyes, finality is an empty and hollow concept with no meaning comparable to a defendant’s rights to relit-igation. But the evisceration of the finality principles imposes costs, and many of these costs are born by the judicial system. See McCleskey v. Zant, 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); United States v. Addonizio, 442 U.S. 178, 184 n. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); Henry J. Friendly, Is *568 Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 148-49 (1970).
As the Seventh Circuit emphasized in Hawkins, collateral review of years-old proceedings ties up prosecutorial resources that could otherwise be used to promptly resolve new criminal cases. See Hawkins v. United States, 706 F.3d 820, 824 (7th Cir.2013), supplemented on denial of reh’g, 724 F.3d 915 (7th Cir.2013), cert. denied, — U.S.—, 134 S.Ct. 1280, 188 L.Ed.2d 299 (2014). Furthermore, post-conviction petitioners occupy the time of defense counsel who might otherwise turn their valuable but finite energies to a defense when it matters most: at trial. And the ultimate victims of this burdened system are other litigants, civil and criminal, who find the courthouse door clogged by the everrising number of post-conviction petitions.
By undermining finality, expansive collateral review also harms our criminal-justice system more broadly. Because endless collateral review keeps convictions and sentences in legal limbo and makes it more doubtful that announced punishment will actually be imposed, it eviscerates the deterrent effect of criminal law. See Teague v. Lane, 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). For similar reasons, it reduces public confidence in our criminal-justice system, see Addonizio, 442 U.S. at 184 n. 11, 99 S.Ct. 2235. And it threatens to diminish the quality of judging in the first instance, since, as Professor Bator recognized long ago, there is “nothing more subversive of a judge’s sense of responsibility, of the inner subjective conscientiousness which is so essential a part of the difficult and subtle art of judging well, than an indiscriminate acceptance of the notion that all the shots will always be called by someone else.” Paul M. Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L.Rev. 441, 451 (1963).
Ultimately, repetitious litigation under the guise of collateral error correction “disparages the entire criminal justice system,” McCleskey, 499 U.S. at 492, 111 S.Ct. 1454, by undermining a key justification for the existence of final judgments: to give all interested parties — defendants, victims, and society alike — closure and a chance to move on and look forward rather than back. As Justice Harlan put it:
At some point, the criminal process, if it is to function at all, must turn its attention from whether a man ought properly to be incarcerated to how he is to be treated once convicted. If law, criminal or otherwise, is worth having and enforcing, it must at some time provide a definitive answer to the question litigants present or else it never provides an answer at all. Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional restraints. But this does not mean that in so doing, we should always be halting or tentative. No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.
Mackey v. United States, 401 U.S. 667, 690-91, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part).
At the time Justice Jackson lamented the flood of post-conviction petitions in Brown v. Allen, the federal courts heard approximately 500 state-prisoner habeas petitions a year. 344 U.S. 443, 536 n. 8, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring in the result). In recent years, *569 they have heard close to 20,000 annually, of which fewer than one-half of one percent have succeeded. Joseph L. Hoffmann & Nancy J. King, Justice, Too Much and Too Expensive, N.Y. Times, Apr. 16, 2011, at WK8. Ultimately, “no one in a position to observe the functioning of our byzantine federal-habeas system can believe it an efficient device for separating the truly deserving from the multitude of prisoners pressing false claims.” McQuiggin v. Perkins, — U.S.—, 133 S.Ct. 1924, 1942-43, 185 L.Ed.2d 1019 (2013) (Scalia, J., dissenting).
Reasonable people may disagree over the proper tradeoff between finality and error correction, but it is not up to judges to supplant Congress’s judgment on this point with their own. Above some constitutional crossbar, which most would agree is easily cleared by our current system, Congress alone possesses the power and responsibility to define the contours of federal collateral review. And by Congress’s own terms, the proper focus of such review is on whether, in the direct proceedings, there was a “violation of the Constitution or laws of the United States.” 28 U.S.C. § 2255(a). Because Whiteside’s sentence was properly imposed according to the undisputed law in force at the time, there was no such violation.
When the majority expands the scope of § 2255 in excess of what Congress intended, or excuses Whiteside’s untimely petition in clear violation of statutory requirements, it augments its own power at Congress’s expense. As is often the case in federal post-conviction review, dissatisfaction with the underlying provisions of the criminal law fuels expansion of what should be a selectively utilized device for collateral attack. Whatever problems may exist in our substantive criminal and sentencing regimes, reform is properly committed to Congress via its constitutional authority, not to judges through the backdoor of collateral review.
Seldom has a court broken more china en route to a result. Certificates of ap-pealability, doctrines of retroactivity, statutes of limitation, pertinent precedents are all disregarded. Law is relegated to the margins. All that need be staked is one’s own claim to sole possession of the “truth” and “right.” Instead of respecting the limitations that Congress, the Supreme Court, and our precedent have imposed on § 2255, the majority conflates claims that are cognizable only on direct appeal with the sort of fundamental defects that represent the proper focus of § 2255. The Supreme Court has warned against an approach under which
the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed.... Wise judicial administration of the federal courts counsels against such [a] course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.
Sunal v. Large, 332 U.S. 174, 182, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947).
The majority’s approach devalues collateral review by transforming its nature. The Great Writ, upon which § 2255 was modeled, has earned its name not only because of its power, but because, when used properly, it is used sparingly and to correct certain fundamental infractions. Today, the majority renders post-conviction review unrecognizable as compared to its intended role at the Founding: to challenge sentences in violation of a court’s “jurisdiction or detention by the Executive without proper legal process.” McCleskey, 499 U.S. at 478, 111 S.Ct. 1454 (internal citation omitted); see also Swain v. Pressley, 430 U.S. 372, 385-86, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (Burger, C.J., concur *570 ring in part and concurring in the judgment).
The Great Writ stands for the fundamental proposition that government too is subject to the given law. Here the government observed the law; it is, sadly, a court that accords no meaning to that fact. How is it that requiring someone to serve a sentence lawfully imposed and constitutionally rendered becomes a “plain injustice” and a “fundamental unfairness”? Maj. Op. at 554. This path vindicates no fundamental liberty. It only transforms collateral review into a double of direct review, a redundant mechanism for routine error correction, deployed to unsettle sentences that were imposed years earlier under governing law, in accordance with unexceptionable procedure, and by a sovereign acting in accordance with its sovereign duty to protect citizens from those who repeatedly violate its criminal laws.
For the aforementioned reasons, and because I view this decision as wholly wrong and deeply damaging to our criminal-justice system, I respectfully dissent.