ON REHEARING EN BANC

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-7152

DEANGELO MARQUIS WHITESIDE,

        Petitioner - Appellant,

    v.

UNITED STATES OF AMERICA,

        Respondent - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, District Judge. (1:09-cr-00069-MR-1; 1:12-cv-00118-MR)

Argued: September 18, 2014      Decided: December 19, 2014

Before TRAXLER, Chief Judge, WILKINSON, NIEMEYER, MOTZ, KING, GREGORY, SHEDD, DUNCAN, AGEE, KEENAN, WYNN, FLOYD, THACKER and HARRIS, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Traxler, and Judges Niemeyer, Motz, King, Shedd, Duncan, Agee, Keenan, Floyd, Thacker and Harris joined. Judge Gregory wrote a dissenting opinion, in which Senior Judge Davis joined. Judge Wynn wrote a dissenting opinion. Judge Diaz did not participate in this decision.

**ARGUED**: Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville,

North Carolina, for Appellee.  **ON BRIEF**: Henderson Hill, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

WILKINSON, Circuit Judge:

Deangelo Whiteside pled guilty to a charge of possession with intent to distribute at least 50 grams of cocaine base, pursuant to 21 U.S.C. § 841(a)(1). Based upon his criminal record, he received the career offender enhancement under the United States Sentencing Guidelines and was sentenced to 210 months imprisonment. Whiteside now raises various claims on a 28 U.S.C. § 2255 petition arguing that his sentence should be vacated in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). In accordance with the relevant statutes, and in reliance upon Supreme Court and circuit precedent, we hold that the filing of the § 2255 petition was untimely, and we therefore affirm the district court's dismissal of the petition. We decline to address the other claims raised by the petitioner.

I.

Starting in 2007, various drug dealers in Asheville, North Carolina, began identifying Deangelo Marquis Whiteside as a wholesale crack cocaine distributor in the area. Following an investigation, Whiteside was charged on July 22, 2009 in the Western District of North Carolina with one count of possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Prior to his plea agreement, the government notified Whiteside that it intended to pursue an enhanced penalty under 21 U.S.C. § 851 based on his 2002 North

3

Carolina conviction for possession with intent to manufacture, sell, or deliver a controlled substance.

The presentence report determined that petitioner was accountable for 1951.9 net grams of powder cocaine and 468.3 net grams of cocaine base. Under 21 U.S.C. § 841(b)(1)(A), this quantity of drugs would have subjected him to a mandatory minimum of ten years in prison. The report detailed as well Whiteside's lengthy criminal record, including numerous controlled-substances offenses, assault with a deadly weapon on a government officer, and additional counts of assault, hit and run, and resisting a public officer, which, independent of any career offender enhancement, established a criminal history category of V. See JA at 137. Whiteside did, however, qualify for the career offender sentencing enhancement under § 4B1.1 of the United States Sentencing Guidelines based on the 2002 conviction and another 1999 North Carolina conviction for possession with intent to manufacture, sell, and deliver cocaine.

The presentence report, accepted by the district court, recommended an advisory guidelines range of 262 to 327 months based on the offense conduct, Whiteside's criminal record, and a three-level reduction for acceptance of responsibility. The government made a motion under § 5K1.1 of the Sentencing Guidelines for a downward departure for substantial assistance,

4

which the court accepted. In light of the motion and after full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the district judge ultimately sentenced Whiteside to 210 months. The court entered judgment on July 20, 2010, and petitioner did not pursue a direct appeal. His conviction became final on August 3, 2010, when his time for appeal expired.

On May 18, 2012, petitioner filed a motion under 28 U.S.C. § 2255 to vacate his sentence in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). He argued that the sentence should be vacated because after Simmons his prior drug offenses would no longer qualify as predicate felony convictions for purposes of sentencing enhancements, including the career offender enhancement under § 4B1.1 of the guidelines. See Appellant's Br. at 5. Assuming he would again receive a three-level reduction for acceptance of responsibility and a substantial assistance downward departure, Whiteside contends that, if resentenced, he would be subject to a markedly lower advisory guidelines range. Id. The government responds that the district court "possessed both the statutory authority and the discretion to impose the sentence it imposed, and were this case remanded and [p]etitioner resentenced, the district court could properly impose the same sentence, even without application of the career-offender enhancement." Gov't Br. at 47.

5

The threshold issue before this court concerns the timeliness of Whiteside's § 2255 petition. The district court for the Western District of North Carolina denied petitioner's motion as untimely and declined to apply equitable tolling. A divided panel of this court vacated the sentence and remanded for resentencing, holding that the statutory limitations period should be equitably tolled and that Whiteside's claims were otherwise cognizable on collateral review. See Whiteside v. United States, 748 F.3d 541 (4th Cir. 2014). A majority of the active judges in the circuit voted to rehear the case en banc. See Order Granting Rehearing En Banc of July 10, 2014. We now hold that the petition is untimely and affirm the district court's dismissal of it.

II.

Petitions for collateral relief filed pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations governed by § 2255(f).[1] The statute provides that the one-year clock is triggered by one of four conditions, whichever occurs latest:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is

---

[1] This discussion is modified and adapted from section II of the dissent to the panel's original decision in this case. See 748 F.3d 541, 556 (4th Cir. 2014).

removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).

A.

Petitioner contends that his claim falls under § 2255(f)(4), and that United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), qualified as a new "fact" for purposes of that provision. Whiteside's suit would be timely under this theory, since he filed his petition less than a year after Simmons was handed down.

Whiteside grounds his argument on the Supreme Court's decision in Johnson v. United States, 544 U.S. 295 (2005). In Johnson, the defendant's sentence in the original proceeding was enhanced on the basis of two state convictions, one of which was later vacated. Following vacatur, Johnson sought federal post-conviction relief, contending that his enhanced sentence was no longer valid. Johnson's conviction had become final more than a year before his § 2255 petition was filed, but the Court concluded that the vacatur qualified as a new fact for purposes

7

of subsection (f)(4).  See Johnson, 544 U.S. at 300-02.  As the Court noted:

> We commonly speak of the "fact of a prior conviction," and an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order entering it.  In either case, a claim of such a fact is subject to proof or disproof like any other factual issue.

Id. at 306-07 (internal citation omitted).

Johnson does not govern Whiteside's claim.  Simmons represented a change of law, not fact.  The circuits to have considered this type of issue have uniformly reached the same conclusion.  See, e.g., Phillips v. United States, 734 F.3d 573, 580-83 (6th Cir. 2013) (finding the petition untimely where an intervening change in the law was insufficient to render the petitioner actually innocent); Lo v. Endicott, 506 F.3d 572, 575 (7th Cir. 2007) (finding that an intervening change in law was not a new factual predicate sufficient to reset the statute of limitations period under AEDPA); E.J.R.E. v. United States, 453 F.3d 1094, 1098 (8th Cir. 2006) (rejecting an intervening change in law as insufficient to reset the statute of limitations period under AEDPA and declining to equitably toll the statute of limitations); Shannon v. Newland, 410 F.3d 1083, 1088-89 (9th Cir. 2005) (same); see also Minter v. Beck, 230 F.3d 663, 666 (4th Cir. 2000) (rejecting, in a similar context, defendant's attempt to invoke a change in law as an impediment to filing a

habeas petition sufficient to toll AEDPA's statute of limitations).[2]

Contrary to the vacatur at issue in Johnson, Simmons did not directly alter Whiteside's legal status as a prior state offender. See Lo, 506 F.3d at 575. A conviction is a fact for sentencing purposes, but a relevant legal rule is not. Simmons, "unlike a predicate conviction, is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved." E.J.R.E., 453 F.3d at 1098. This point is illustrated by the simple observation that "[w]e would never . . . ask a jury to decide whether a judicial decision had indeed changed [the] law in the relevant way, nor would the parties introduce evidence on the question." Shannon, 410 F.3d at 1089. Indeed, if this change in law is a "fact," then what would not be?

Instead of altering the factual landscape, Simmons announced a generally applicable legal rule. A decision "establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the 'factual predicate' for that claim." Id. Decisions that change the legal significance of certain facts without modifying them do not

---

[2] The statute of limitations provisions in AEDPA under 28 U.S.C. § 2244(d)(1)(A)-(D) and 28 U.S.C. § 2255(f)(1)-(4) are in all material respects identical.

9

qualify under (f)(4). Simmons did precisely this: unlike a vacatur decision, it altered the legal significance of Whiteside's prior convictions without amending the convictions themselves. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."); see also United States v. Pollard, 416 F.3d 48, 55 (D.C. Cir. 2005).

Whiteside's (f)(4) argument fails for the additional reason that it would effectively nullify (f)(3), which provides for tolling in instances where the defendant's claim is founded on a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). As the Eighth Circuit has reasoned:

> [The specific criteria enumerated in (f)(3) for tolling the limitations period] impliedly reject[] the notion that the creation of a new right by the Supreme Court that is not made retroactive to cases on collateral review, other rulings of law by the Supreme Court, and decisions taken from the courts of appeal in all instances, could trigger any of the limitations periods enumerated under § 2255.

E.J.R.E., 453 F.3d at 1098.

If changes in law are cognizable under (f)(4), then (f)(3) becomes superfluous because any claim brought under (f)(3) could also be brought under (f)(4). See Lo, 506 F.3d at 575. "To suggest, as [the petitioner] does, that any decision by any

10

court on any issue could constitute a 'factual predicate' would swallow up the specifically delineated limitations in" (f)(3). Id. at 576. These considerations indicate that "subsequent interpretations of the law can be the basis of delay in filing a § 2255 motion only in accordance with § 2255(f)(3)" -- not (f)(4). Sun Bear v. United States, 644 F.3d 700, 702 n.5 (8th Cir. 2011) (en banc) (internal quotation marks omitted). In other words, Whiteside's view would render the statute of limitations virtually without limits. Notably, Whiteside does not even attempt to argue that his claim satisfies the requirements specified in (f)(3).

B.

Whiteside asserts in the alternative that if we reject his statutory argument, the statute of limitations should be equitably tolled. Equitable tolling of petitions for collateral review is available only when a defendant demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Under this court's precedent, equitable tolling is appropriate in those "rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v.

11

Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotation marks omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Whiteside claims that he was prevented from timely filing by the unfavorable precedent that would have governed his claim had he sued prior to Simmons. The standard announced in Holland, however, focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant's control prevented him from filing within the limitations period at all. See Shannon, 410 F.3d at 1090. Although Simmons plainly made a collateral attack on Whiteside's sentence more plausible, nothing prevented Whiteside from filing his petition within the one-year statute of limitations. See E.J.R.E., 453 F.3d at 1098.

The Supreme Court has made clear that alleged futility cannot serve as "cause" for a procedural default in the context of collateral review. As the Court emphasized in Bousley v. United States, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." 523 U.S. 614, 623 (1998) (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)) (internal quotation marks omitted). Every case "presents a myriad of possible claims." Engle, 456 U.S. at 133. The demands of finality oblige

12

a petitioner to raise those claims that might possibly have merit even where "he thinks [the court] will be unsympathetic to the claim;" otherwise the claim is considered procedurally defaulted. Id. at 130. It would be anomalous to contend that futility -- something the Supreme Court has clearly said cannot serve as cause for procedural default – does nonetheless serve as cause for failure to timely file a § 2255 petition. For the law of procedural default and that of equitable tolling address the same basic question of when failures to raise claims are to be deemed excusable.

This court's decision in Minter v. Beck confirms this line of reasoning. 230 F.3d 663 (4th Cir. 2000). In that case, as here, the defendant's claim originally seemed foreclosed by extant precedent. After the issuance of a favorable decision, Minter sought to collaterally attack his sentence, invoking a provision equivalent to § 2255(f)(2). He contended that the newly issued decision, by nullifying the unfavorable precedent that had previously barred his claim, served to remove an "impediment" to filing. After rejecting this argument, we held that equitable tolling was inappropriate. Minter, 230 F.3d at 666-67. We reasoned that unfavorable precedent may have rendered a timely claim unsuccessful but did not operate to bar Minter from making the attempt. This court echoed the Supreme Court in

13

saying that "futility . . . is not a valid justification for filing an untimely" petition.  Id. at 666.

Nothing in Holland undermines these holdings.  Though the Court there cautioned against a "too rigid" approach to equitable tolling, it nonetheless made clear that federal courts were to invoke the doctrine only in cases of truly "extraordinary circumstances." Holland, 560 U.S. at 634, 649. In that case, petitioner was the victim of extraordinary negligence by his attorney, who not only failed to file his federal habeas petition in a timely fashion, but also failed to communicate with petitioner, failed to inform him that the Florida Supreme Court had decided his case, and ignored his many letters repeatedly emphasizing the importance of preserving his claims for federal review. Id. at 652. Furthermore, the Florida courts repeatedly denied petitioner's attempts to file *pro se* or have his attorney removed for this record of ineptitude. Id. at 653. But those facts are far afield from the case at bar, which involves unimpeded access to federal court for claims brought there all the time.

Tellingly, Whiteside makes no allegation that he was unable to file in a timely fashion -- only that doing so would probably have been unsuccessful in light of extant case law.  But that allegation is manifestly insubstantial given the many defendants who filed suits prior to Simmons asserting the exact same

14

substantive claim that Whiteside now raises, including, of course, Simmons himself. See, e.g., United States v. Brandon, 376 F. App'x 343 (4th Cir. 2010) (per curiam) (unpublished); United States v. Summers, 361 F. App'x 539 (4th Cir. 2010) (per curiam) (unpublished); United States v. Simmons, 340 F. App'x 141 (4th Cir. 2009) (per curiam) (unpublished), vacated, 130 S. Ct. 3455 (2010). These claims were not entirely meritless even under then-existing precedent: the Supreme Court's decision in Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), and the Sixth Circuit's opinion in United States v. Pruitt, 545 F.3d 416 (6th Cir. 2008), strongly foreshadowed Simmons. Equitable tolling thus may not be applied where, as here, the only impediment to timely filing was the discouragement felt by petitioner when calculating his odds of success.

III.

Whiteside insists, however, that the disparity in circuit law between then and now justifies setting aside the limitations period. That contention, however, overlooks the open-ended nature of his equitable tolling arguments. Roughly 80,000 persons are sentenced by federal district courts each year, and "[p]recedential decisions come pouring out of the federal courts of appeal and the Supreme Court" routinely. Hawkins v. United States, 706 F.3d 820, 824 (7th Cir. 2013). If every favorable precedential decision could become, as Whiteside would have it,

15

"a ticket to being resentenced," id., the criminal justice system would need to "continually . . . marshal resources in order to keep in prison defendants whose trials and appeals [and sentences] conformed to then-existing constitutional [and statutory] standards." Id. (quoting Teague v. Lane, 489 U.S. 288, 310 (1989) (plurality opinion)) (internal quotations omitted) (brackets in original).

In other words, if we accepted Whiteside's view, we would be on the way to holding that a myriad of substantive changes in law past the point of finality would suffice to equitably toll the statute of limitations in § 2255(f) whenever it might be conjectured that past and future outcomes would be different. The implications of any such argument foreshadow a tectonic shift of resources from trial and direct appeal to repetitive rounds of collateral review. While resentencing is generally not as significant an encumbrance as a retrial, "the cumulative burden of resentencing in a great many stale cases could be considerable." Id. That, of course, is the precise prospect a statute of limitations is enacted to prevent. As several circuits have noted, it is quite improper to use the doctrine of equitable tolling to circumvent the express limitations contained in § 2255. See, e.g., Lo, 506 F.3d at 576. A step of this magnitude would require either an act of Congress or a

16

ruling from the Supreme Court, neither of which has come to pass.

Whiteside's conviction became final on August 3, 2010. At the time, he was sentenced under the sentencing scheme outlined in United States v. Harp. See 406 F.3d 242 (4th Cir. 2005). On August 17, 2011, the court, sitting en banc, reversed the panel decision in Simmons, expressly overruling Harp and this court's treatment of predicate convictions for career offender enhancements. See Simmons, 649 F.3d 237. Whiteside did not file his motion to vacate his sentence in light of Simmons until May 18, 2012, almost two years after his conviction became final. But the relevant limitations period under § 2255(f) is one year after the conviction is final, not one year from a decision that effectuates a change in circuit law.

To appreciate the point, suppose three, five, or ten years had passed between a conviction becoming final and the time when some change in circuit law occurred. If we were to adopt Whiteside's argument, whenever there is a change in circuit law of sufficient magnitude (whatever that is), a petitioner would have a year to file after the change, even if many years had passed since the conviction became final. That simply vitiates the point of statutes of limitations in general and this one in particular, namely that the relevant evidence not be stale or missing. Even changes in law must be applied to facts, and

17

statutes of limitation reduce the risk of claims being less accurately litigated long after the fact.

It bears briefly summarizing just how much Whiteside would trench upon the prerogatives of other institutions to find equitable tolling in these circumstances. Petitioner would circumvent Congress's highly refined statute of limitations, which specifically sets forth in § 2255(f)(3) when tolling would lie as a result of a change in law, a criterion which petitioner has manifestly failed to satisfy. Petitioner would further have us disregard the Supreme Court's pointed language in Bousley and Engle and its historic limitation of equitable tolling to extraordinary circumstances beyond a petitioner's control. See Holland v. Florida, 560 U.S. 631 (2010). In disregarding the prerogatives of other institutions, we would invite additional collateral attacks long after convictions were final and whenever a change in law of arguable import might appear. Every statute of limitations contemplates by definition the possibility that some favorable development after the limitations period might occur. The legislative branch of our government is entrusted to set the balance between the ends of equity and the values safeguarded by according final judgments due effect. It is not our office to reset or recalibrate that balance in the case at bar. The judgment of the district court

18

must accordingly be affirmed because the petition herein was not timely filed.[3]

<u>AFFIRMED</u>

---

[3]  The court wishes to express its appreciation both to Ann Hester and Amy Ray for the fine quality of their advocacy in this case.

GREGORY, Circuit Judge, dissenting, with whom DAVIS, Senior Circuit Judge, joins:

The majority today makes a choice. It has chosen not to exercise its powers in equity – which the Supreme Court recently affirmed – and to allow a gross injustice to be committed against Deangelo Whiteside. Nobody disputes that Whiteside has been erroneously designated a career offender. Still, the majority insists that he cannot challenge this mistake. As a result of our decision, Whiteside faces at least eight more years in prison. It is simply unjust to deny someone the opportunity to receive a properly calculated sentence. I must dissent.

Make no mistake that we possess the power to grant Whiteside the equitable relief he seeks and, indeed, to which he is entitled. The Supreme Court specifically addressed our ability to do so a few years ago in Holland v. Florida, when it reaffirmed a "presumption in favor" of equitably tolling AEDPA's statute of limitations. 560 U.S. 631, 646 (2010) (emphasis in original) (internal quotation marks omitted). "In the case of AEDPA," wrote the Court, "the presumption's strength is reinforced by the fact that 'equitable principles' have traditionally 'governed' the substantive law of habeas corpus . . . ." Id. (quoting Munaf v. Geren, 553 U.S. 674, 693 (2008)). While noting AEDPA's basic purpose of eliminating

delays, the Court clarified that the statute was never meant to displace "prior law, under which a petition's timeliness was always determined under equitable principles." Id. at 648. The Court was extraordinarily clear: AEDPA's statute of limitations "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Id. at 645 (quoting Day v. McDonough, 547 U.S. 198, 208 (2006)).

The Court in Holland specifically rejected the majority's approach to equitable tolling in two ways. First, it made clear that courts must be flexible and exercise their equitable powers on a case-by-case basis instead of blindly following "mechanical rules." Id. at 650 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946)). Second, a court is not inexorably bound to follow past precedent when doing so would prevent it from "'accord[ing] all the relief necessary to correct . . . particular injustices.'" Id. (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248 (1944)). Instead, we should "follow[] a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.'" Id. (quoting Hazel-Atlas, 322 U.S. at 248).

Despite this, the majority does exactly what Holland warns against by applying a rigid rule that results in gross

21

injustice. It was our own mistake that resulted in Whiteside's classification as a career offender, which we finally corrected in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). By that point, however, Whiteside had already been sentenced under a regime that wrongly turned a blind eye to the particular circumstances of a defendant's predicate convictions. The career offender enhancement – for which nobody disputes Whiteside is now legally ineligible – increased his Sentencing Guidelines range from 140-175 months to 262-327 months. After a government-requested downward departure, he was sentenced to 210 months. Had Whiteside received an identical downward departure without the enhancement, he would have received a sentence of 112 months. This difference of more than eight years presents precisely the kind of "situation[] [that] demand[s] equitable intervention . . . to correct . . . [a] particular injustice[.]" Holland, 560 U.S. at 650 (quoting Hazel-Atlas, 322 U.S. at 248).

Rather than heed the Supreme Court, the majority constructs for itself and then hides behind false barriers to doing what is right. I of course recognize that we have previously found that the futility of a petitioner's claim does not constitute a circumstance external to his control justifying an untimely section 2254 petition. Minter v. Beck, 230 F.3d 663, 666 (4th Cir. 2000). However, the majority places too much reliance on Minter given the Supreme Court's later Holland

22

decision.[1]  Indeed, in concluding that Whiteside's claim should be barred, the majority primarily relies upon cases decided prior to Holland.  See, e.g., Bousley v. United States, 523 U.S. 614 (1998); Engle v. Isaac, 456 U.S. 107 (1982).  Certainly the Supreme Court was aware of its own precedent, yet still chose to empower courts to exercise discretion when faced with individual circumstances that might "warrant special treatment."  Holland, 560 U.S. at 650.  Although the majority correctly observes that "[n]othing in Holland undermines the[] holdings" in Bousley and Engle, Maj. Op. at 14, it is also true that nothing in Holland prohibits this Court, despite Bousley and Engle, from nonetheless doing justice through the exercise of its equitable powers.

The majority furthermore attempts to justify its position by contending that equitable tolling of Whiteside's claim would thwart the supposedly holy principle of finality, as well as "trench upon the prerogatives of other institutions."  Maj. Op. at 18.  This is simply untrue.  Just this year, pursuant to its Congressional mandate, the United States Sentencing Commission

_____

[1] I find it glaringly inconsistent of the majority to warn against "invit[ing] additional collateral attacks," Maj. Op. at 18-19, while simultaneously penalizing Whiteside for not bringing a meritless petition in the time before Simmons was decided, see Maj. Op. at 12 ("[N]othing prevented Whiteside from filing his petition within the one-year statute of limitations.").

issued retroactive amendments to the Guidelines that will reduce the base offense level for certain drug offenses by two. See Sentencing Guidelines for United States Courts, 79 Fed. Reg. 25,996, 26,004 (proposed May 6, 2014). The Commission projects over 46,000 offenders will be eligible for resentencing, though not career offenders like Whiteside.[2] This development – which only takes effect with the approval of Congress – exposes the majority's hyperbolic tendencies. Although the majority accuses equitable tolling of portending "a tectonic shift of resources," Maj. Op. at 16-17, apparently our legislative branch disagrees.

When it comes to "the values safeguarded by according final judgments due effect," Maj. Op. at 19, I concur with Congress that finality gives way to fairness. And the 2014 Guidelines amendments do not mark the first time our government has found it necessary to take steps towards reducing the draconian effects of our sentencing laws. In 2010, after realizing that over eighty percent of crack cocaine defendants were African Americans, Congress took action to correct what had developed as a discriminatory sentencing scheme by passing the Fair Sentencing Act. See United States v. Blewett, 746 F.3d 647, 667 (6th Cir. 2013) (en banc) (Moore, J., concurring) (noting that

---

[2] See News Release, U.S. Sentencing Comm'n, U.S. Sentencing Commission Unanimously Votes to Allow Delayed Retroactive Reduction in Drug Trafficking Sentences (July 18, 2014); U.S.S.G. § 1B1.10(a)(2)(A).

prior to the Act, "the average federal drug sentence for African Americans was forty-nine percent longer than the average federal drug sentence for Caucasians"). It has also been more than one year since our executive branch declined to enforce mandatory-minimum penalties for low-level drug offenses, which, according to our Attorney General, disproportionately affect communities of color.[3]

My point is that the statistical deck was stacked against Deangelo Whiteside from the beginning. Then, our mistake in casting him a career offender relegated him to an even longer term of imprisonment. In the face of this mistake, it is ironic that our branch of government is the one dragging its feet on the road towards equal justice under the law. Rather than take the slightest step in defense of a citizen's liberty, we throw up our hands and say, "too little, too late." And for what reason? To avoid the chaos that would befall society if

---

[3] See Eric Holder, U.S. Attorney General, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013) ("We also must confront the reality that – once they're in the system – people of color often face harsher punishments than their peers . . . . This isn't just unacceptable – it is shameful."). Recently, the Justice Department also expressed its confidence in a robust habeas process by announcing a new policy that it will no longer ask criminal defendants who plead guilty to waive the right to bring future claims of ineffective assistance of counsel. See Press Release, U.S. Dep't of Justice, Attorney General Holder Announces New Policy to Enhance Justice Department's Commitment to Support Defendants' Right to Counsel (Oct. 14, 2014).

criminals were imprisoned according to a correct understanding of the law?

I dissent.

WYNN, Circuit Judge, dissenting:

The majority opinion will, without a doubt, "drive citizens to rub[] their eyes and scratch[] their heads." United States v. Foster, 674 F.3d 391, 395 (4th Cir. 2012) (Wilkinson, J., concurring in denial of rehearing en banc). "If one were to inquire of an objectively reasonable person on the street whether" a court should allow the correction of a sentencing mistake caused solely by its own error—an error that will likely cost a man eight years of freedom—no doubt the citizen's "response would be 'Of course. Why do you ask?'" Id.

Habeas corpus allows courts "'to cut through barriers of form and procedural mazes'" to effectuate the writ's ultimate purpose: safeguarding individual freedom against lawless state action and ensuring "that miscarriages of justice . . . are surfaced and corrected.'" Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cnty., Cal., 411 U.S. 345, 350 (1973) (quoting Harris v. Nelson, 394 U.S. 286, 291 (1969)). Not surprisingly, then, the Supreme Court has repeatedly affirmed that "'the principles of comity and finality informing'" procedural restrictions on habeas corpus proceedings "'must yield to the imperative of correcting a fundamentally unjust'" punishment. Schlup v. Delo, 513 U.S. 298, 320–21 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 495 (1986)). And by eschewing "mechanical rules" that prevent courts from

according "the relief necessary to correct . . . particular injustices," the Supreme Court recently made plain that there exists a "presumption in favor" of equitably tolling statutes of limitations to habeas corpus petitions. Holland v. Florida, 560 U.S. 631, 646 (2010) (internal quotation marks and citation omitted).

This is a case that demands a yielding of "mechanical rules" in favor of "the relief necessary to correct" a mistake of our own making. Id. Deangelo Whiteside was sentenced as a career criminal in July 2010. In August 2011, with United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), this Court corrected its misinterpretation of law that had led courts in this Circuit to ignore the particular circumstances of defendants' predicate convictions for sentencing purposes. Undisputedly, in light of Simmons, Whiteside was no career criminal, and his enhanced "career criminal" sentence was premised on this Court's erroneous interpretation of the law. Accordingly, in May 2012, Whiteside petitioned the district court to vacate his sentence. But because more than a year had passed since his sentencing, Whiteside's petition was deemed tardy. Today, this Court refuses to set aside that formalistic time bar in the name of equity.

Strikingly, neither the law nor the facts of this case have changed. All that has changed is our interpretation of the law.

In other words, we either forgot that "it's our job to call balls and strikes"—or we simply got the call dead wrong. Confirmation Hearing on the Nomination of John G. Roberts, Jr. to Be Chief Justice of the United States: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 56 (2005) (statement of Judge John G. Roberts, Jr.). Regardless of whether this Court's error was grounded in judicial activism or an honest mistake, it certainly was not Deangelo Whiteside's fault—yet today the majority comes to the stunning conclusion that he must pay the price.[1]

Further, the other interests at stake here eclipse our interest in finality. Indeed, "if finality were our only or even the more important institutional goal, we would not permit any postconviction relief at all." Hawkins v. United States, 724 F.3d 915, 923 (7th Cir. 2013) (Rovner, J., dissenting from denial of rehearing). It is not finality, but rather "fairness [that] is the lifeblood of our system of justice," and "justice requires the ability to rectify substantial uncontroverted

---

[1] The majority opinion spills considerable ink explaining why the judiciary should not bear the burden of its own mistake. Those who were wrongly (over-)sentenced will surely sleep easier knowing that the courts are not being overworked by too many "tickets to being resentenced." Ante at 16. The prison staff that must look after wrongly-imprisoned defendants—not to mention the taxpayers who foot the hefty bill for their (wrongful) incarceration—might, however, take issue with the majority's calculus.

judicial errors that cause significant injury. This is why in our anthropomorphization of Justice, she is wearing a blindfold, and not running shoes." Id. Denying relief for the sake of finality is particularly nonsensical where, as here, the issue is a purely legal one with no evidentiary or spoilation problems, the sentence is federal and thus skirts comity concerns, the financial cost of incarcerating Whiteside for years he should not spend in jail is surely enormous, and the work associated with correcting Whiteside's sentence—something perhaps not even necessitating a formal resentencing hearing, see, e.g., United States v. Hadden, 475 F.3d 652, 669 (4th Cir. 2007)—is likely minimal.[2]

"Even appellate judges are endowed with brains in the hope and expectation that they will be used to obvious purpose." Foster, 674 F.3d at 394 (Wilkinson, J., concurring in denial of rehearing en banc). If rectifying a mistake of our own creation—one that will cost a man eight years of his freedom—

---

[2] The district court did not err in applying pre-Simmons case law and sentencing Whiteside as it did. The error was ours and ours alone. To the extent the majority's decision to deny habeas relief stems from its reluctance to reverse the district court's dutiful application of Fourth Circuit precedent, the majority's decision is misguided. When an individual's liberty is at stake, I have every confidence that our district court colleagues understand that our role as an appellate court is to correct legal errors, including our own.

does not constitute an "obvious purpose," I do not know what does.  Respectfully, I dissent.