POSNER, Circuit Judge.
This appeal from the denial of a motion under 28 U.S.C. § 2255 to set aside the sentence in a federal criminal case presents the question whether an error in calculating the applicable guidelines sentencing range can be corrected in a post-conviction proceeding, now that the guidelines are merely advisory rather than, as they formerly were, mandatory.
Bernard Hawkins has a long, long history of violent crimes, gun offenses, escapes, drug use, and violations of supervised release. In May 2003 he assaulted two U.S. marshals who were trying to arrest him pursuant to a bench warrant stemming from his failure to attend a court hearing on his latest violation of supervised release. He pleaded guilty to having committed a violent assault, with a weapon, that had inflicted bodily injury on one of the marshals. 18 U.S.C. §§ 111(a)(1), (b), 1114. Surprisingly, given the violence of his assault with a sharply pointed piece of a banister that he had ripped out of its moorings — an offense for which the statutory maximum sentence was 20 years, § 111(b) — his guidelines sentencing range would have been only 15 to 21 months’ imprisonment, or possibly 24 to 30 months (the district judge found it unnecessary to decide which), had he not been a career offender within the then widely understood meaning of the career offender guideline. U.S.S.G. § 4Bl.l(a).
That guideline increases the sentencing range for a defendant who has “at least two prior felony convictions of either a crime of violence or a controlled substance offense.” A criminal record of that character implies an abnormal propensity to commit serious crimes in the future and therefore a need for a greater punishment to incapacitate or deter him. Ryan v. United States, 214 F.3d 877, 881 (7th Cir. 2000); United States v. Belton, 890 F.2d 9, 10 (7th Cir.1989), overruled on other grounds by United States v. Garecht, 183 F.3d 671, 675 (7th Cir.1999). Hawkins had two prior felony convictions for escape, 18 U.S.C. § 751(a), and though both were “walkaway” escapes rather than violent breakouts, the law in this circuit when he was sentenced for the assault was that a walkaway escape is a crime of violence. United States v. Bryant, 310 F.3d 550, 554 (7th Cir.2002). That made Hawkins a career offender and so raised his guidelines range to 151 to 188 months. The judge sentenced him to the bottom of the range. The sentence, though far above the guide *822 lines range that would have been applicable had the career offender guideline not been in play, was well below the statutory maximum for Hawkins’ offense of conviction, which as we said was 20 years.
At the time he was sentenced, the guidelines were mandatory; two years later the Supreme Court in the Booker case declared them advisory. Hawkins’s appeal from his sentence was pending in this court when Booker was decided, and on the authority of that decision we directed the district judge to resentence him. United States v. Hawkins, 136 Fed.Appx. 922 (7th Cir.2005). On remand the judge reimposed the 151-month sentence, and we affirmed. 168 Fed.Appx. 98 (7th Cir. 2006). Three years later the Supreme Court held that an “escape” that takes the form of a failure to report is not a “violent felony” within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e). Chambers v. United States, 555 U.S. 122, 127-30, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). A walkaway escape is similar and is also (given Chambers) not a violent felony within the meaning either of that Act or of the similarly worded career offender guideline. See United States v. Hart, 578 F.3d 674, 681 (7th Cir.2009); United States v. Templeton, 543 F.3d 378, 383 (7th Cir.2008); United States v. Ford, 560 F.3d 420, 426 (6th Cir.2009). So Hawkins filed the section 2255 motion that is now before us. The district judge, in his third ruling with regard to the sentence, denied the motion on the ground that the legal error that he had committed in deeming such an escape a violent felony was not the kind of error that can be corrected after the judgment in a criminal case has become final.
Section 2255(a) authorizes postconviction alteration of a sentence that “was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose ..., or that ... was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.” Hawkins refers us to Narvaez v. United States, 674 F.3d 621, 629-30 (7th Cir.2011), which held that a sentence that violated the career offender sentencing guideline could be successfully attacked in a postconviction proceeding even though the sentence was shorter than the statutory maximum. But Narvaez, as our opinion emphasized, unlike Hawkins, had been sentenced when the guidelines were mandatory. Id. at 628-29; see also Brown v. Rios, 696 F.3d 638, 640 (7th Cir.2012); United States v. Wyatt, 672 F.3d 519, 523 (7th Cir.2012). It was arguable therefore that his sentence exceeded the maximum authorized by “law.” Before Booker the guidelines were the practical equivalent of a statute. Cf. Scott v. United States, 997 F.2d 340, 341 (7th Cir.1993). Departures were permitted on specified grounds, but in that respect the guidelines were no different from statutes, which often specify exceptions.
Not only do the guidelines no longer bind the sentencing judge; the judge may not even presume that a sentence within the applicable guidelines range would be proper. He must determine whether it is consistent with the sentencing considerations set forth in 18 U.S.C. § 3553(a), and if he finds it is not he may not impose it even though it is within the applicable guidelines range. Nelson v. United States, 555 U.S. 350, 351-52, 129 S.Ct. 890, 172 L.Ed.2d 719 (2009); Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).
The first step in sentencing — calculating the guidelines range correctly — was not changed by Booker. But the step is less important now that the guidelines, including the career offender guideline, United States v. Corner, 598 F.3d 411, 415 (7th *823 Cir.2010) (en banc), are merely advisory and the sentencing judge, being forbidden to presume the reasonableness of a guideline sentence, must make an independent determination of whether a guideline sentence would comport with the sentencing standard set forth in 18 U.S.C. § 3553(a). That is a critical difference between Narvaez and the present case and also between the present case and United States v. Paladino, 401 F.3d 471, 482 (7th Cir. 2005). The judge’s error in Paladino was to deem the guidelines mandatory rather than advisory, thus foreclosing application of the sentencing factors in section 3553(a), which might have induced the judge to give a lighter sentence. That was a more serious, a more consequential, error than in the present case. Paladino called it a miscarriage of justice; the lesser error in the present case does not warrant such a characterization. The judge reimposed the 151-month sentence after Booker had made the sentencing guidelines merely advisory, as he well knew when he reimposed the sentence. No longer can it be argued that he imposed a sentence “in excess of the maximum authorized by law,” since the statutory maximum sentence for Hawkins’s offense was as we said 20 years (240 months). Under the regime of Booker the sentencing judge must comply with the command of 18 U.S.C. § 3553(a) “to impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in” the next paragraph of section 3553(a). In resentencing Hawkins the district judge made clear that he considered the 151-month sentence that he had imposed appropriate, even though no longer commanded because the career offender guideline was no longer mandatory. And on postconviction review he confirmed that “apart from the career offender sentencing enhancement it was appropriate for the court to consider Hawkins’ long and violent criminal history” (emphasis added) and therefore that “Hawkins’ sentence was reasonable even without application of the § 4B1.1 career offender enhancement.”
Hawkins argues that he was “punished for conduct that is not punishable,” conduct “that is not criminal,” punished in violation of “substantive law,” “subjected to an illegal enhancement,” and that he has been in prison “longer than the law permitted.” None of these assertions is correct. What’s true is that the judge made a mistake in resentencing Hawkins — he realized that the guidelines were now merely advisory but thought that under them a walkaway escape was a crime of violence. But not every error is corrigible in a post-conviction proceeding, even if the error is not harmless. Suppose the probation service in recommending a sentence to a district judge makes a mistake in applying the (advisory) guideline that the judge doesn’t catch. As a result he imposes an above-guidelines sentence, which he wouldn’t have done had he caught the error; nonetheless the sentence is below the statutory maximum. The error could not be corrected in a postconviction proceeding. Welch v. United States, 604 F.3d 408, 412 and n. 4 (7th Cir.2010); Scott v. United States, supra, 997 F.2d at 342; Gilbert v. United States, 640 F.3d 1293, 1323 (11th Cir.2011) (en banc); United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999).
Neither should an erroneous interpretation of the guidelines be corrigible in such a proceeding — especially when the interpretation is discovered to be erroneous after the proceeding in which it was committed has become final through exhaustion of appellate remedies. For in such a case the challenge to the judgment depends on the retroactive application of a new rule (the corrected interpretation), and such retroactivity is *824 disfavored because it thwarts finality in the criminal process. Teague v. Lane, 489 U.S. 288, 308-10, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Precedential decisions come pouring out of the federal courts of appeals and the Supreme Court. If every precedential decision interpreting the guidelines favorably to a prisoner were a ticket to being resentenced, the Justice Department and the courts might be forced “continually ... to marshal resources in order to keep in prison defendants whose trials and appeals [and sentences] conformed to then-existing constitutional [and statutory] standards.” Id. at 310, 109 S.Ct. 1060. (It has even been suggested, though we’re skeptical, that judges might be discouraged from proposing new interpretations of the guidelines for fear that federal courts would be inundated with claims for postconviction relief. See John C. Jeffries, Jr., “The Right-Remedy Gap in Constitutional Law,” 109 Yale L.J. 87, 98-99 (1999).) Resentencing is not as heavy a burden for a district court as a complete retrial, but it is a burden, and the cumulative burden of re-sentencing in a great many stale cases could be considerable. About 80,000 persons are sentenced in federal district courts every year. In every case the judge must calculate a guidelines sentencing range. A change in the interpretation of a guideline could therefore, if always deemed retroactive, greatly increase both the number of section 2255 motions and the number of resentencings. There is a difference between reversing an error on appeal and correcting the error years later. An erroneous computation of an advisory guidelines sentence is reversible (unless harmless) on direct appeal; it doesn’t follow that it’s reversible years later in a postconviction proceeding.
We said in Narvaez that Chambers “is retroactively applicable on collateral review.” 674 F.3d at 626. Finality is an important social value, but not important enough to subject a defendant to “a punishment that the law cannot impose upon him,” Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), such as a sentence that exceeds the statutory maximum sentence for his crime or a guideline ceiling that has the force of a statute because the judge is forbidden to exceed it. See Narvaez v. United States, supra, 674 F.3d at 626; Welch v. United States, supra, 604 F.3d at 413-14; see also United States v. Shipp, 589 F.3d 1084, 1089, 1091 (10th Cir.2009). An error in the interpretation of a merely advisory guideline is less serious. Given the interest in finality, it is not a proper basis for voiding a punishment lawful when imposed.
Though demoted by Booker to being merely advisory, the guidelines remain influential. But how influential? These days only a slight majority (53.1 percent) of sentences are within the applicable guidelines range. U.S. Sentencing Commission, “Preliminary Quarterly Data Report” 12 (3rd Quarter Release Preliminary Fiscal Year 2012 Data Through June 30, 3012), www.ussc.gov/Data_and_Statistics/ Federal_Sentencing_Statistics/Quarterly_ Sentencing_Updates/USSC_2012_3rd_ Quarter_Report.pdf (visited Jan. 19, 2013). Still, the guideline ranges exert a gravitational pull on non-guideline sentences, making them closer to sentences within that range than they would be were there no guidelines. (This is what is called in psychology an “anchoring effect.”) So the judge might have given Hawkins a lower sentence had Chambers been decided earlier. But he would not have been required to do so and we don’t think that a sentence that is well below the ceiling imposed by Congress whether directly or by delega *825 tion to the Sentencing Commission should, as Hawkins argues, be considered a “miscarriage of justice” that can be collaterally attacked, just because the judge committed a mistake en route to imposing it. That’s the balance the eases strike between the interest in finality and the injustice of a possibly mistaken sentence. See, e.g., United States v. Addonizio, 442 U.S. 178, 186, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Scott v. United States, supra, 997 F.2d at 342; United States v. Mikalajunas, supra, 186 F.3d at 495-96. Booker made reversible on direct review all sentences based on the belief, overturned by that decision, that the guidelines were mandatory. United States v. Paladino, supra, 401 F.3d at 483. But reversible on appeal doesn’t mean reversible in postconviction proceedings, and in any event our defendant unlike Narvaez was not sentenced under the mandatory guidelines regime.
In Hill v. United States, supra, 368 U.S. at 428, 82 S.Ct. 468, the Supreme Court ruled that a denial of a criminal defendant’s right of allocution (the right to make a statement in court before he’s sentenced) was not “an error of the character or magnitude cognizable under a writ of habeas corpus” because it was “neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.” Granted, the error in Hill probably was harmless: “there is no claim that the defendant would have had anything at all to say if he had been formally invited to speak.” Id. at 429, 82 S.Ct. 468. But it was not harmless in United States v. Addonizio, supra, 442 U.S. at 187, 99 S.Ct. 2235, where similar language — including language quoted from Hill — appears. Id. at 185, 99 S.Ct. 2235. Hawkins has not tried to catalog the subset of miscalculations of advisory guidelines that are miscarriages of justice that can be corrected in postconviction proceedings rather than just legal errors; he argues in effect that all errors (except, presumably, harmless ones) are miscarriages of justice, and with that we disagree.
Hawkins was sentenced nine years ago. He has served almost three-quarters of the sentence that he now challenges as illegal. Yet it is “illegal” (his word, but not the right word) in the sense not that it must be nullified, but only that, were he correct in calling it a miscarriage of justice, it would have to be reconsidered. If we ordered resentencing, the judge could reimpose the identical sentence. The defendant’s criminal record would justify the judge’s doing that. Indeed we’re surprised that the top of the guidelines range for a violent assault with a weapon by a hardened criminal on two federal officers, inflicting bodily injury, is only 21 or perhaps 30 months, a quarter or less of the statutory maximum. It would be no surprise if a sentencing judge, asked to choose between 21 (or 30) and 151 months, chose the latter.
The judgment denying the section 2255 motion filed by the defendant is
Affirmed.