POSNER, Circuit Judge.
This opinion, a supplement to the panel opinion reported at 706 F.Bd 820, explains why a majority of the panel does not believe that rehearing is warranted by the Supreme Court’s decision in Peugh v. United States, — U.S. -, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013), rendered after the panel opinion.
The panel had held that an error in calculating a defendant’s guidelines sentencing range does not justify postconviction relief unless the defendant had, as in Narvaez v. United States, 674 F.3d 621 (7th Cir.2011), been sentenced in the preBooker era, when the guidelines were mandatory rather than merely advisory. Peugh holds that a sentence violates the Constitution’s ex post facto clause if in calculating the defendant’s advisory guidelines range (as the judge is required to do even though he can if he wants sentence the defendant outside that range) the judge had calculated the range in effect when he sentenced the defendant, rather than when the defendant committed the crime for which he’s being sentenced, if the earlier range was lower (less punitive). 133 S.Ct. at 2088. The arguable significance of Peugh for the present case is that the Court held that an error in calculating a merely advisory guidelines range nevertheless invalidated the sentence.
The issue in this case differs from that in Peugh in several respects, however. One is that Peugh involved constitutional error — a violation of the ex post facto clause. Our case involves no claim of constitutional error — no claim for example that Hawkins’s sentence exceeded the statutory maximum (as the sentence in Narvaez did, if mandatory guidelines are treated as equivalents of statutes, as the panel *917 opinion in this case suggested they can be, 706 F.3d at 822). There is just a claim that the sentencing judge miscalculated the advisory guidelines range and might have given a lower sentence had he not miscalculated it. Peugh tells us only that the advisory nature of the guidelines in the present era, the Booker era, which allows the sentencing judge broad discretion, nevertheless does not excuse constitutional violations arising from the judge’s miscalculating the applicable guideline.
Another difference between Peugh and the present case is that the two cases are governed by different legal standards. The standard governing ex post facto challenges, involved in Peugh, is not the same as the standard for postconviction relief for nonconstitutional errors, applicable to our case. Peugh holds that the ex post facto clause is violated when “a change in law creates a ‘significant risk’ of a higher sentence.” 133 S.Ct. at 2088. In contrast, postconviction relief requires a showing that “the error ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ Under this standard, habeas [corpus] petitioners ... are not entitled to habeas [corpus] relief based on trial error unless they can establish that it resulted in ‘actual prejudice.’ ” Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citations omitted). Postconviction review is therefore proper when for example the judge imposes a sentence that he had no authority to impose, as in Narvaez, since the consequence for the defendant in such a case is “actual prejudice” — an “injurious effect” on the judgment. But it doesn’t follow that postconviction relief is proper just because the judge, though he could lawfully have imposed the sentence that he did impose, might have imposed a lighter sentence had he calculated the applicable guidelines sentencing range correctly.
Another reason to doubt the applicability of Peugh to our case is that the Supreme Court didn’t say that the rule it was ■ announcing was to have retroactive effect, and thus be subject to invocation even by persons whose sentences became final before June 10 of this year, when the Supreme Court handed down Peugh. Yet unless it is retroactive, Peugh can’t help our petitioner, whose sentence became final seven years ago. A decision is retroactive if it is a “substantive” decision but (with immaterial exceptions) not if it’s a “procedural” one. “New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms.... Such rules apply retroactively because they “necessarily carry a significant risk that a defendant stands convicted of ‘an . act that the law does not make criminal’ ” or faces a punishment that the law cannot impose upon him____ New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.” Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (emphasis in original; citations omitted). So since Peugh says that “failing to calculate the correct Guidelines range constitutes procedural error,” 133 S.Ct. at 2083, the implication is that the rule announced in Peugh won’t be applied retroactively — and the statement in Schriro that a procedural error “merely raise[s] the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise” is an exact description of the present case.
Now that we know that errors in applying the advisory guidelines are procedural, cases reinterpreting the advisory guide *918 lines — including Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), on which our petitioner relies for his argument that his prior offense wasn’t a “violent felony” — don’t have retroactive application either, though there may be exceptions (none applicable to this case): Chambers may still be considered “substantive” when the pre-Chambers understanding of “violent felony” resulted in a sentence that exceeded either the statutory maximum under the Armed Career Criminal Act, Welch v. United States, 604 F.3d 408, 412 and n. 5 (7th Cir.2010), or (as in Narvaez) the guidelines range when the guidelines were still mandatory. See also Brown v. Caraway, 719 F.3d 583, 586-88 (7th Cir.2013).
Our panel opinion does not deny that the district judge had committed an error that would be corrigible on direct review. But we found the social interest in a belated correction of the error outweighed by the social interest in the finality of judicial decisions, including sentences. About finality all that the panel dissent said was that “were we writing on a blank slate, we might argue against the majority’s elevation of finality over fairness.” 706 F.3d at 828. That’s vague. As the panel opinion pointed out, “an erroneous computation of an advisory guidelines sentence is reversible (unless harmless) on direct appeal; it doesn’t follow that it’s reversible years later in a postconviction proceeding.” Id. at 824. The panel dissent evinced no recognition of the importance of finality to an effective judicial system, or of the difficulty of balancing “fairness” (meaning what exactly?) against finality. Finality is an institutional value and it is tempting to subordinate such a value to the equities of the individual case. But there are dangers, especially if so vague a term as “fairness” is to be the touchstone.
Judicial systems that ignore the importance of finality invite unreasonable delay in the disposition of cases. A case in point is Brazil, which like a number of other countries, such as India, has an extraordinary problem of judicial delay — unbelievable really from a U.S. perspective. In India there are “30 million cases pending in various courts and an average time span of 15 years to get the dispute resolved through court system.” Vandana Ajay Kumar, “Judicial Delay in India: Causes & Remedies,” 4 Journal of Law, Policy & Globalization 16 (2012), www.iiste.org/ Journals/index.php/JLPG/article/view/2069 (visited July 24, 2013). In Brazil more than 70 percent of the cases pending in its courts in 2010 had been filed in earlier years — often many years earlier. See CNJ (Conselho Nacional de Justina [National Council of Justice]), Justice in Numbers 2010 6 (2010). Since 1988, “the backlog of cases in judicial dockets has multiplied by a factor of ten, and as a consequence trial delays have more than doubled.... Some cases have been pending since the 1940s.... Conservative statistics estimate the number of lawsuits awaiting final decision to be more than 50 million. Between 1995 and 1999, 32.2 million processes [cases] entered the Brazilian courts. However, only 22.6 million of these were decided during the same period. This leaves a deficit of almost 10 million processes left unjudged.” Augusto Zimmermann, “How Brazilian Judges Undermine the Rule of Law: A Critical Appraisal,” 11 International Trade & Business L.Rev. 179,192 (2008).
The reasons for this delay are various, but one reason is that the Brazilian judicial system has only a weak concept of finality. Apart from allowing interlocutory appeals promiscuously, Brazil’s judicial culture permits reopening (which is what our case involves) promiscuously. The costs in judicial overload are very great.
*919 We are not Brazil or India. But we have to worry about delay in our federal judicial system as well, because of the difficulty of filling federal judicial vacancies and the increasing complexity of federal cases, which increases the time required for deciding them. Such costs must be kept in mind in deciding how generously to allow postconviction retraction of sentences. Fairness to victims of errors in guidelines calculation that might or might not have lengthened a sentence (or shortened it for that matter, thus conferring a windfall on the defendant) must be balanced against the harm to victims of judicial delay brought about by judges’ neglect of the social interest in judicial finality. Furthermore, as the Supreme Court explained in Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (citations omitted), “the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards” (emphasis in original; citation omitted). In our case, it’s the federal government rather than the states that have to marshal those resources. And the procedural error is in sentencing rather than at trial. But the point is the same — it’s costly for government to have to defend sentences and resentence defendants long after the original sentences were imposed.