In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1520

MICHAEL L. MILLIS,

*Petitioner-Appellant,*

*v.*

M. SEGAL, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 19-cv-01137 — **Sue E. Myerscough**, *Judge.*

———————————

ARGUED DECEMBER 7, 2020 — DECIDED JULY 28, 2021

———————————

Before SYKES, *Chief Judge*, and BRENNAN and ST. EVE, *Circuit Judges*.

BRENNAN, *Circuit Judge*. In 1994, Michael Millis was found guilty of several crimes related to a pair of armed robberies in the Eastern District of Kentucky. At sentencing, Millis's previous convictions qualified him as a career offender under the then-mandatory Sentencing Guidelines. Millis received a total sentence of 410 months' imprisonment and since his

confinement, he has sought post-conviction relief at least a dozen times.

Millis does so again here. Attempting to benefit from intervening legal changes that affect his career offender designation, Millis invokes what is often known as the "savings clause" of 28 U.S.C. § 2255(e), which would allow him to petition for a writ of habeas corpus under 28 U.S.C. § 2241. But the savings clause is a narrow exception to the general rule that a federal sentence must be collaterally attacked under 28 U.S.C. § 2255. Millis's sentence on his guidelines counts fell within the range for a non-career offender, so the district court held that his career offender designation had not resulted in a miscarriage of justice, the third element of this court's savings clause test. We agree and affirm the denial of his habeas petition.

## I

In May 1993, Michael Millis and Michael Creeden committed two armed robberies in Ohio and Indiana. In June 1993, state police stopped the duo and searched their vehicle, which contained ammunition, a pistol, and cash proceeds from the robberies. A magistrate judge later found that traffic stop to be pretextual. But by then, Creeden had already implicated Millis as the getaway driver in the robberies.

In February 1994, a grand jury in the Eastern District of Kentucky returned a five-count superseding indictment against Millis:

- Count One charged aiding and abetting an armed bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a), (d);

- Count Two charged aiding and abetting the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c);

- Count Four charged possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1);

- Count Five charged aiding and abetting a Hobbs Act robbery in violation of 18 U.S.C. §§ 2 and 1951(a);

- Count Six charged aiding and abetting the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c).

Millis went to trial in March 1994, and a jury convicted him on all five counts.

Millis's presentence report, prepared using the 1993 U.S. Sentencing Commission Guidelines Manual, initially calculated his total offense level as 26 and his criminal history category as V. But two of Millis's previous convictions—a 1992 Ohio conviction for aggravated assault and a 1991 Ohio conviction for selling marijuana—plus his federal armed bank robbery conviction qualified him as a career offender for sentencing. Under U.S.S.G. § 4B1.1 (1993), a career offender designation applied, in relevant part, if "(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." This designation raised his total offense level to 34 and his criminal history category to VI.

Millis's sentencing occurred before *United States v. Booker*, 543 U.S. 220 (2005), so the resulting guidelines range was

mandatory absent a departure. Based on Millis's total offense
level of 34 and his criminal history category of VI, Counts
One, Four and Five (the non-§ 924(c) counts) carried a guide-
lines range of 262 to 327 months. Counts Two and Six (the
§ 924(c) counts) carried mandatory minimum sentences of 60
months and 240 months, required by statute to be served con-
secutive to any other sentence. With his career offender status,
Millis's sentencing exposure was 562 to 627 months: 262 to 327
months for the guidelines range on the non-§ 924(c) counts
and 300 months for the mandatory sentences on the § 924(c)
counts. Without his career offender status, however, Millis's
sentencing exposure would have been 410 to 437 months: 110
to 137 months for the guidelines range on the non-§ 924(c)
counts and 300 months for the mandatory sentences on the
§ 924(c) counts. So the terms for the non-§ 924(c) counts fluc-
tuated based on the guidelines, but the terms for the § 924(c)
counts remained fixed by statute.

At Millis's sentencing hearing, the district court began by
announcing that the guidelines range and mandatory sen-
tences "have come out too heavy because they would come
out to 45 years [540 months]."[1] "I'm contemplating departing
downward," the district court stated, "on those elements
where I have any discretion to depart downward, to 110
months plus the mandatory part of five years [60 months] and
20 years [240 months] which would bring up a total of 410
months." After summarizing Millis's offense conduct, the dis-
trict court remarked that, "for this kind of conduct, I would
have given 25 years [300 months], subject to parole which

---

[1] Because the guidelines range and mandatory sentences resulted in a
total of 562 to 627 months, it appears this "45 years" (540 months) calcula-
tion was a misstatement by the district court.

would have resulted in a sentence of eight or ten years." A sentence of 45 years, for the district court, would be "probably tantamount to life imprisonment for driving the get-away car in two robberies" and "excessive." The district court then said: "This conduct is minimal. … If I could get it down to 25 [years], which is what I think would be appropriate if I had discretion, I would do that, but we couldn't get it down that far."

After noting the preservation of the government's sentencing objections and adopting the presentence report, the district court sentenced Millis as follows. On a guidelines range of 262 to 327 months, Millis benefitted from a downward departure and received 110 months on Counts One, Four, and Five—the non-§ 924(c) counts—served concurrently. For the § 924(c) counts, Millis received the statutorily required 60 months on Count Two and 240 months on Count Six, with each term consecutive to any other count, for a total of 300 months. Taken together, Millis received a total sentence of 410 months' imprisonment.

The district court then reiterated: "Again, I will say for the record if I had discretion in this case, I would sentence him to about 25 years [300 months]." In "clarify[ing] the reasons for [its] departure," the district court noted that it looked at Millis's age, "which is not the sole reason for departing but is a factor," as well as "the underlying circumstances" of the convictions that qualified him as a career offender. Remarking that Millis's "other prior record is also minor," the district court concluded its departure explanation by stating:

> So I believe the career status and the criminal history category overstates his actual criminal background, and then these mandatory minimums kick in, that

adding it up, technically it comes out to a -- in a sen-
tence that is in excess of what justice requires. So there-
fore we'll make the sentence of 410 months. I will state
for the record, if these guidelines are ever looked at ret-
roactively some day, that I would, in my discretion,
sentence him to 25 years if I had discretion.

In its statement of reasons, the district court confirmed that it
"departed based on [Millis's] age (not the sole reason)" and
"also considered the underlying circumstances of the prior
convictions which made [Millis] a career offender." At bot-
tom, it "believe[d] [Millis's] career offender status over-
state[d] the seriousness of his actual criminal background."

## II

In general, a federal prisoner must collaterally attack his
conviction or sentence under 28 U.S.C. § 2255. Only one mo-
tion may be filed under § 2255, unless the appropriate court
of appeals grants permission for a second or successive mo-
tion. *See* 28 U.S.C. § 2255(h). A federal prisoner may receive
permission to file another § 2255 motion in limited circum-
stances—based on "newly discovered evidence" or "a new
rule of constitutional law, made retroactive to cases on collat-
eral review by the Supreme Court." *Id.* "In the great majority
of cases," a § 2255 motion, which must be filed in the district
of conviction, is the "exclusive postconviction remedy" for a
federal prisoner. *Purkey v. United States*, 964 F.3d 603, 611 (7th
Cir.), *reconsideration denied*, 812 F. App'x 380 (7th Cir. 2020),
*and cert. denied*, 141 S. Ct. 196 (2020).

But sometimes, a federal prisoner may seek relief under
the general habeas corpus statute, 28 U.S.C. § 2241. This path-
way, however, is a narrow one. *E.g.*, *Higgs v. Watson*, 984 F.3d

1235, 1238 (7th Cir. 2021). If relief under § 2255 is "inadequate or ineffective to test the legality of his detention," then a federal prisoner may petition under § 2241 in the district of confinement, 28 U.S.C. § 2255(e), which is how Millis's appeal comes to us. We have developed a three-part test for determining whether the savings clause of § 2255(e) applies. To petition successfully under § 2241, a petitioner must establish that: (1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked that case in his first § 2255 motion and the case applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice. *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019); *see also In re Davenport*, 147 F.3d 605, 608–09 (7th Cir. 1998). In the end, "there must be some kind of structural problem with section 2255 before section 2241 becomes available." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc).

Millis has made myriad post-conviction challenges since his sentencing. We recount only those relevant here.

On direct appeal, Millis challenged his conviction and sentence. The Sixth Circuit affirmed. *United States v. Millis*, 89 F.3d 836 (6th Cir. 1996) (per curiam) (unpublished table decision). Then Millis collaterally attacked his sentence under § 2255 for the first time, which the district court and the Sixth Circuit rejected. *Millis v. United States*, 172 F.3d 49 (6th Cir. 1998) (unpublished table decision). After that denial, Millis made additional attempts at post-conviction relief. None were successful.

In July 2017, Millis, now a prisoner at FCI-Pekin in Illinois, invoked the savings clause and petitioned under § 2241 in the

Central District of Illinois. But upon the government's recommendation, Millis moved to change venue, asking for his habeas petition to be transferred back to the Eastern District of Kentucky. With that motion granted, the district court that originally sentenced Millis denied his § 2241 petition, and the Sixth Circuit affirmed. *Millis v. King*, No. 17-6328, (6th Cir. July 18, 2018) (per curiam) (unpublished order). The Supreme Court later denied certiorari. *Millis v. Kallis*, 139 S. Ct. 1223, *reh'g denied*, 140 S. Ct. 291 (2019).

In April 2019, Millis petitioned again for habeas relief under § 2241 in the Central District of Illinois, amending that petition two months later. Among other claims, Millis argued that he was no longer a career offender based on *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc). In *Burris*, the Sixth Circuit held that a conviction under a subsection of Ohio's aggravated assault statute—one of Millis's career offender predicate convictions—no longer qualifies as a crime of violence under the career offender designation of the guidelines. *Id.* at 407. Although the district court denied Millis relief on his other claims, it ordered the government to respond to his *Burris*-based career offender claim. The government later did so in a lengthy brief.

Millis's career offender claim failed as well. The district court concluded that, even if the government had conceded the first two elements of the savings clause test, Millis had not suffered a miscarriage of justice from his career offender designation. According to the district court, *Burris* meant that Millis's prior Ohio conviction for aggravated assault no longer qualified him as a career offender. That error alone did not ensure relief because, to the district court, "while Millis was designated a career offender, he was, in effect, not

sentenced as one." Millis's career offender designation, the district court explained, resulted in an initial guidelines range of 262 to 327 months for the non-§ 924(c) counts. But the downward departure led to Millis receiving a 110-month sentence, which fell at the bottom of the guidelines range of 110 to 137 months for a non-career offender. For the district court, Millis received a within-guidelines sentence like that of a non-career offender, even though he may have benefitted from a further departure absent his career offender designation. Because "that possibility does not open the door to post-conviction relief where the sentence itself is lawful," Millis suffered no miscarriage of justice, and so his invocation of the savings clause failed.

## III

Millis now appeals the denial of his most recent § 2241 petition, which we review de novo. *Camacho v. English*, 872 F.3d 811, 813 (7th Cir. 2017).

## A

Savings clause cases are rarely simple. As we have said recently, "[o]ur test has its complexities and raises some difficult questions that to date remain unanswered." *Guenther v. Marske*, 997 F.3d 735, 741 (7th Cir. 2021) (footnote omitted). The intricacies within our savings clause jurisprudence mainly result from our test's first two requirements, *see Chazen*, 938 F.3d at 864–65 (Barrett, J., concurring), both of which the government disputes conceding at the district court.

We need not answer those questions or resolve those concessions, though, because Millis has not suffered a

miscarriage of justice.[2] In light of *Burris*, Millis may have received an erroneous career offender designation, yet he did not receive a career offender sentence. Recall that Millis, as a career offender, initially faced a guidelines range of 262 to 327 months on the non-§ 924(c) counts and mandatory consecutive sentences of 60 and 240 months on the § 924(c) counts. But at sentencing, the district court downwardly departed from this career-offender guidelines range for the non-§ 924(c) counts and imposed a sentence of 110 months' imprisonment. This 110-month sentence fell not only well below Millis's guidelines range—262 to 327 months—as a career offender, but also at the bottom of his guidelines range—110 to 137 months—as a *non*-career offender. With or without his career offender label, Millis still faced a statutorily required 300 months on the § 924(c) counts, and it is these mandatory consecutive sentences that drove his total sentence of 410 months' imprisonment. Put another way, Millis received a career offender sentence only in name, not effect, so he suffered no miscarriage of justice from that designation.

This court has previously addressed the effect of an erroneous career offender designation under § 2255. In *Narvaez v. United States*, the petitioner had been sentenced under the pre-*Booker*, mandatory guidelines as a career offender based on two prior Wisconsin convictions for escape from custody. 674

---

[2] Because Millis cannot show that he suffered a miscarriage of justice, we need not decide whether he satisfies the first two savings clause requirements. *Cf. Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016) ("Of course we are not bound to accept the government's concession when the point at issue is a question of law."). For purposes of this appeal, we assume that Millis meets these requirements and express no view on whether the government has conceded them.

F.3d 621, 624, 625 (7th Cir. 2011).[3] Narvaez's career offender designation increased his guidelines range from 100 to 125 months to 151 to 188 months, and he ultimately received a sentence at "the midpoint of the enhanced guidelines range"—170 months' imprisonment. *Id.* at 624. But intervening changes in the law casted doubt on Narvaez's career offender status, so this court reversed and remanded for re-sentencing. *Id.* at 630. Narvaez, this court explained, "never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive *and* violent offenders." *Id.* at 627. So, "[t]he imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense." *Id.* at 629. Because Narvaez's career offender status "illegally increased [his] sentence approximately five years beyond that authorized by the sentencing scheme," that error went to the "fundamental legality of his sentence" and "constitute[d] a miscarriage of justice." *Id.* at 630.[4]

---

[3] In resolving the § 2255 appeal in *Narvaez*, this court explained that its use of the term "miscarriage of justice"—a component of our savings clause test under § 2241—came "from the Supreme Court's holding that a non-jurisdictional, non-constitutional error of law is not a basis for collateral attack under § 2255 unless the error is 'a fundamental defect which inherently results in a complete miscarriage of justice.'" 674 F.3d at 623 n.1 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[4] *Narvaez* also mentions that the government had pointed to *Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) (en banc). *Narvaez*, 674 F.3d at 630 n.14. The panel in *Narvaez* distinguished that case because "[u]nlike the defendant in *Sun Bear*, Mr. Narvaez's sentence was not within the sentencing range had the career offender status not been applied." *Id.*

This court again confronted an erroneous career offender designation, but in the post-*Booker* context, in *Hawkins v. United States*, 706 F.3d 820, 821 (7th Cir.), *opinion supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013). There, the petitioner appealed the denial of his § 2255 petition and contended that his two federal convictions for walkaway escape no longer qualified him as a career offender. 706 F.3d at 821, 822. On resentencing, Hawkins received 151 months' imprisonment, with his career offender designation increasing his guidelines range from at least 15 to 21 months all the way to 151 to 188 months. *Id.* (noting that "the district court found it unnecessary to decide" whether the initial guidelines range was 15 to 21 months or 24 to 30 months). Rejecting Hawkins's attempts to fall under *Narvaez*, this court affirmed. *Id.* at 823-25. *Narvaez*, this court noted, concerned a career offender label—and thus, a guidelines enhancement—that applied when the guidelines were mandatory, not advisory. *Id.* at 822. So "[i]t was arguable" that Narvaez's sentence "exceeded the maximum authorized by 'law.'" *Id.*

Not so for Hawkins. His initial sentencing occurred when the guidelines were mandatory, but his resentencing occurred when the guidelines were advisory. *Id.* That meant the district court had to "make an independent determination of whether a guideline sentence would comport with the sentencing standard set forth in 18 U.S.C. § 3553(a)." *Id.* at 823. Hawkins,

---

"Nevertheless, to the extent a tension between [*Narvaez*] and the Eighth Circuit's reasoning in *Sun Bear* exists," this court continued, "we respectfully disagree with our colleagues on the Eighth Circuit." *Id.* Although *Sun Bear* is analogous to Millis's case, we do not read that language from *Narvaez* as conclusively resolving the relationship between those two cases.

who remained a career offender on resentencing, received the same sentence as he did before—151 months' imprisonment. *Id.* As this court explained, "[i]n resentencing Hawkins[,] the district judge made clear that he considered the 151-month sentence that he had imposed appropriate, even though no longer commanded because the career offender guideline was no longer mandatory." *Id.* The "independent determination" required by § 3553(a), coupled with the advisory nature of the post-*Booker* guidelines, placed Hawkins outside of *Narvaez*'s ambit. *See id.* at 822–23. "Given the interest in finality," Hawkins's erroneous career offender status under the advisory guidelines was "not a proper basis for voiding a punishment lawful when imposed." *Id.* at 824. Hawkins therefore suffered no miscarriage of justice. *Id.* at 825.[5]

Like *Hawkins*, Millis does not fall under the rule of *Narvaez*. With his 110-month sentence falling at the bottom of the non-career offender guidelines range of 110 to 137 months, Millis received a career offender sentence in name, but not in effect. True, Millis's sentencing occurred under the mandatory guidelines, as did *Narvaez*. And Narvaez's career offender status increased his guidelines range from 100 to 125 months to 151 to 188 months, with the district court ultimately imposing a sentence of 170 months' imprisonment. *Narvaez*, 674 F.3d at 624. So as a result, "[t]he career offender status illegally

---

[5] In a supplement to the initial *Hawkins* opinion, the panel explained why *Peugh v. United States*, 569 U.S. 530 (2013), did not require a rehearing. *Hawkins v. United States*, 724 F.3d 915, 916–19 (7th Cir. 2013) (supplemental opinion explaining denial of panel rehearing); *see also id.* at 919–25 (Rovner, J., dissenting from panel rehearing). The full court, by a 5-4 vote, also denied review in a separate order. *Hawkins v. United States*, 725 F.3d 680 (7th Cir. 2013).

increased Mr. Narvaez's sentence approximately five years beyond that authorized by the sentencing scheme." *Id.* at 630.

But the same cannot be said here. Millis was never "subjected to the enhanced punished reserved" for career offenders because he received a sentence like that of a non-career offender. *Id.* at 624. And although Narvaez's career offender status "simply took as unchallenged a premise that was not true and gave him no way of avoiding the consequences of that designation," Millis's downward departure meant that he avoided those consequences. *Id.* at 629. Designating Millis as a career offender may have "branded [him] as a malefactor." *Id.* But a label is all that Millis received from that designation. His 110-month sentence on the non-§ 924(c) counts was not "far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense." *Id.* Instead, Millis received punishment at the bottom of the guidelines range for any other similarly situated non-career offender; Narvaez, by contrast, did not. With our focus on substance, and not on form, we cannot say that Millis bore the consequences of a "grave error" from his designation as a career offender. *Chazen*, 938 F.3d at 856. Millis, then, suffered no miscarriage of justice. *Cf. Hawkins*, 706 F.3d at 823 ("[N]ot every error is corrigible in a postconviction proceeding, even if the error is not harmless.").

**B**

Against all this, Millis points to some broad language in *Narvaez*. Even though the government was correct that Narvaez did "not have an absolute right to a lower sentence," he did have "an absolute right not to stand before the court as a career offender when the law does not impose that label on

him." *Narvaez*, 674 F.3d at 629. Yet we must read those state-
ments in context. They came in response to the government's
assertion that, because Narvaez's sentence fell within the au-
thorized statutory maximum, he could have received that
same sentence without a career offender designation. *Id.* This
court disagreed. *Id.* That Narvaez's sentence fell "below the
applicable statutory-maximum sentence [was] not alone de-
terminative of whether a miscarriage of justice ha[d] oc-
curred." *Id.* Among other things, what also mattered was that
Narvaez's career offender designation "branded [him] as a
malefactor" and "created a legal presumption that he was to
be treated differently from other offenders because he be-
longed in a special category reserved for the violent and in-
corrigible." *Id.*

Millis, however, was not treated differently from other of-
fenders. His downward departure rebutted the career of-
fender presumption that had burdened Narvaez and affected
his ultimate sentence. Still, an erroneous career offender des-
ignation under the mandatory guidelines usually results in
both an increased mandatory guidelines range *and* an in-
creased total sentence. When that occurs, a § 2241 petition re-
mains a permissible vehicle for relief. *See Brown v. Carraway*,
719 F.3d 583, 587–88 (7th Cir. 2013) ("Accordingly, provided
that the other *Davenport* conditions are present, we conclude
that a petitioner may utilize the savings clause to challenge
the misapplication of the career offender Guideline, at least
where, as here, the defendant was sentenced in the pre-*Booker*
era." (footnote omitted)).[6] This is because, pre-*Booker*, "the

---

[6] *Brown*, circulated to all judges in active service under Circuit Rule
40(e), recognized that *Narvaez*, though an appeal under § 2255, could

guidelines had the force and effect of law; the only lawful sentence was a guidelines sentence." *Id.* at 588. *Brown* itself bears that out, with a career offender guidelines range (360 months to life) resulting in a career offender sentence (360 months). *Id.* at 585. So does *Narvaez*, with a career offender guidelines range (151 to 188 months) resulting in a career offender sentence (170 months). But not here. Millis's case thus presents an uncommon circumstance: his downward departure ensured that he received a non-career offender—that is, lawful—sentence, notwithstanding a career offender guidelines range. The sentence that Millis actually received controls, not how that sentence was described. So we hold that Millis suffered no miscarriage of justice.

To be sure, Millis's career offender designation still "increase[d], dramatically, the point of departure for his sentence," as did the designation in *Narvaez*. 674 F.3d at 629. And the district court at sentencing said several times that it would have given Millis only 25 years (300 months) if it had discretion and if the mandatory guidelines were ever looked at retroactively. From this, Millis contends that "but for" his career offender status, he would have received a substantially lower sentence.

Yet that assertion misunderstands the nature of downward departures under the mandatory guidelines. Before *Booker*, district courts could depart from the mandatory guidelines only in limited circumstances. Section 3553(b) permitted departures on a finding that "there exist[ed] an aggravating or mitigating circumstance of a kind, or to a degree, not

---

provide relief under the savings clause for § 2241 petitions. *Brown*, 719 F.3d at 587–88.

adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1994); *see* U.S.S.G. § 5K2.0 (1993) ("Grounds for Departure" policy statement detailing same). And in a series of policy statements, the Sentencing Commission outlined permissible considerations for a district court's departure decision based on specific offender characteristics, *see* U.S.S.G. §§ 5H1.1–1.12 (1993) (policy statements detailing relevant considerations personal to an offender), as well as other grounds, *see* U.S.S.G. §§ 5K1.1–2.16 (1993) (policy statements specifying permissible departures based on "substantial assistance to authorities" and "other grounds").

The district court here departed downward from the guidelines range primarily because of Millis's career offender designation. That label, in the district court's words, "overstate[d] the seriousness of his actual criminal background." Millis also claims that the district court departed downward based in part on his "minor role." That is not the case. Millis's role as a getaway driver received mention in the district court's sentencing comments. Yet that rationale—and crucially, its corresponding guidelines provision, U.S.S.G. § 3B1.2 (1993) ("Mitigating Role")—was not referenced in the district court's statement of reasons. Nor was it acknowledged when the district court "clarif[ied] the reasons for [its] departure" at Millis's sentencing hearing. Because Millis did not receive a minor role reduction at sentencing, he cannot claim one after the fact.

Although we do not question the substantial downward departure that Millis has already received, we seriously doubt the viability of any further departure absent his career

offender designation, especially one necessary to reach the 300-month sentence that the district court said it would have imposed. *Cf. United States v. Thomas*, 930 F.2d 526, 531 (7th Cir. 1991) (noting that, pre-*Booker*, district courts had "to articulate the specific factors justifying the extent of [a] departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on the defendant's sentence"), *abrogated in part on other grounds by United States v. Canoy*, 38 F.3d 893, 904–07 (7th Cir. 1994).[7] Taking away Millis's career offender designation (and thus his increased criminal history category) leaves only his age as a factor from the departure rationale announced by the district court. That consideration, though, "[was] not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range" at the time of Millis's sentencing. U.S.S.G. § 5H1.1 (1993) ("Age" policy statement). Putting aside these impermissible factors, how other guidelines provisions could supply additional grounds for an even lower sentence than 110 months on the non-§ 924(c) counts, Millis does not explain.

Millis and the government spar over other alleged errors in the district court's calculation of his guidelines range, but we need not decide these issues. Unlike Millis's claim under *Burris*, which at least presents a colorable rationale for revisiting his career offender designation, there is no pathway for

---

[7] Millis points us to the Supreme Court's decision in *Dean v. United States*, which held that mandatory minimum sentences required by § 924(c) may be considered when determining the appropriate sentence for other counts of conviction. 137 S. Ct. 1170, 1178 (2017). Yet as we have said, and as Millis admits, *Dean* does not apply retroactively. *Worman v. Entzel*, 953 F.3d 1004, 1011 (7th Cir. 2020).

considering these additional guidelines miscalculations nearly thirty years after sentencing. "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins*, 706 F.3d at 824. "Finality," this court has said, "is an important consideration, especially in the law of collateral review." *Hill v. Rios*, 722 F.3d 937, 939 (7th Cir. 2013). So too here.

**IV**

Although Millis received a career offender designation, he did not receive a career offender sentence. His 110-month sentence on the non-§ 924(c) counts fell at the bottom of the guidelines range for a non-career offender and well below the guidelines range for a career offender. Because Millis suffered no miscarriage of justice, we AFFIRM the district court's denial of his § 2241 petition.