In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-3639

ROBERT A. MANGINE,

*Petitioner-Appellant*,

*v.*

SHANNON D. WITHERS,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:18-cv-01030 — **Nancy J. Rosenstengel**, *Chief Judge.*

_____

ARGUED APRIL 14, 2022 — DECIDED JULY 6, 2022

_____

Before SYKES, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Robert Mangine is serving a 35-year sentence for federal drug and firearm offenses. He sought post-conviction relief under 28 U.S.C. § 2241, contending that the sentencing court mischaracterized him as a career offender and that the error in turn has resulted in his ineligibility for a discretionary sentence reduction he would like to pursue under 18 U.S.C. § 3582(c)(2). The district court denied

relief, concluding that such ineligibility does not amount to a miscarriage of justice—thereby precluding Mangine from satisfying the conditions for pursuing post-conviction relief under § 2241. We affirm.

## I

### A

A 2001 jury trial in the Northern District of Iowa ended with Mangine being convicted of possessing a firearm as a felon (18 U.S.C. §§ 922(g)(1), 924(a)(2)); conspiring to distribute methamphetamine (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 860); possessing with intent to distribute methamphetamine (21 U.S.C. § 841(a)(1), (b)(1)(C)); and carrying a firearm in connection with a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)).

The district court in Iowa sentenced Mangine by applying the then-mandatory Guidelines and finding he qualified as a career offender under U.S.S.G. § 4B1.1(a) based on two prior crimes of violence—convictions for second degree burglary in both Iowa and Florida. The career-offender designation did not raise Mangine's total offense level of 39 but did increase his criminal history category from V to VI. The criminal history elevation had no impact on Mangine's ultimate Guidelines range, however. That range was 420 months to life—360 months on the drug and felon-in-possession offenses followed by a 60-month mandatory consecutive sentence for the § 924(c) conviction. The district court sentenced Mangine to 420 months (35 years).

Mangine appealed but did not challenge his sentence. The Eighth Circuit affirmed his convictions. See *United States v. Mangine*, 302 F.3d 819 (8th Cir. 2002). He subsequently

brought post-conviction motions under §§ 2255 and 2241 challenging his career offender designation. None proved successful.

B

In July 2015 the Northern District of Iowa, on its own motion, considered whether to grant Mangine a sentence reduction under 18 U.S.C. § 3582(c)(2) because of Amendment 782 to the Guidelines, which retroactively reduced by two levels the offense level for most drug-trafficking crimes. See *United States v. Guerrero*, 946 F.3d 983, 985 (7th Cir. 2020). Application of Amendment 782 would have reduced Mangine's offense level from 39 to 37. But because his criminal history category remained VI, Amendment 782 did not change his Guidelines range as originally calculated for the drug and felon-in-possession convictions. At offense level 37 and criminal history category VI, the range remained 360 months to life for those offenses. In the end, then, the district court did not reduce Mangine's sentence based on Amendment 782. See U.S.S.G. § 1B1.10(a)(2)(B) (specifying that "a reduction … is not authorized under 18 U.S.C. § 3582(c)(2) if … [a]n amendment … does not have the effect of lowering the defendant's applicable guideline range").

All remained quiet for two years. But in April 2018, Mangine filed a new § 2241 petition in the Southern District of Illinois, arguing this time around that *Mathis v. United States*, 136 S. Ct. 2243 (2016), made clear that he never should have been designated as a career offender. Mangine was right on the substance: *Mathis* held that Iowa's burglary statute—which supported one of Mangine's predicate crimes of violence—is not a "violent felony" within the meaning of the Armed Career Criminal Act. See 18 U.S.C. § 924(e). It follows,

Mangine correctly observed, that this same offense was not a crime of violence for the purposes of the career offender enhancement. See *United States v. Taylor*, 630 F.3d 629, 633 n.2 (7th Cir. 2010) ("As we have done in prior cases, we refer to cases dealing with the ACCA and the career offender guideline provision interchangeably."). And, with only one predicate felony conviction, Mangine no longer qualified as a career offender.

From there the question became whether Mangine, as a procedural matter, could find a vehicle to pursue a sentencing reduction. The time for direct appeal had long since passed. And § 2255 remained unavailable because Mangine could not satisfy the exceptions authorizing a second or successive motion. See 28 U.S.C. § 2255(h). Realizing this, Mangine turned again to § 2241 by pointing to *Mathis* and submitting that he no longer qualified as a career offender.

C

The district court denied Mangine's petition, concluding that he could not pursue relief under § 2241 without being able to show that withholding that opportunity would result in a miscarriage of justice. The district court saw no such injustice because, with or without the career offender designation, Mangine's Guidelines range for the narcotics and felon-in-possession offenses would have remained 360 months to life. That reality left Mangine unable to demonstrate he received a sentence beyond that authorized by law.

Mangine now appeals.

## II

### A

"As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255 in the district of conviction." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). Indeed, "[i]n the great majority of cases," § 2255 is "the exclusive postconviction remedy for a federal prisoner." *Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020). But if § 2255 is "inadequate or ineffective to test the legality of [a prisoner's] detention," relief may be granted under 28 U.S.C. § 2241, the general habeas corpus statute, in the district of incarceration. 28 U.S.C. § 2255(e).

By its terms, § 2255 limits second or successive motions to claims of newly discovered evidence sufficient to establish innocence and new, retroactive rules of constitutional law. See *id.* § 2255(h). Intervening Supreme Court statutory interpretation decisions that lead a prisoner to "discover[] that he is in prison for something that the law does not criminalize" are outside the ambit of § 2255(h). *Purkey*, 964 F.3d at 615. And this is where § 2241 enters the picture—through the so-called savings clause in § 2255(e).

We have adopted a three-part test to determine whether a prisoner can proceed under the § 2255(e) savings clause for statutory interpretation claims:

> (1) the claim relies on a statutory interpretation case, not a constitutional case and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) the

> error is grave enough to be deemed a miscar-
> riage of justice.

*Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019). Those fa-
miliar with our precedent will recognize these criteria as the
*Davenport* factors. See *In re Davenport*, 147 F.3d 605, 610–11
(7th Cir. 1998).

To be sure, this approach is not without controversy. In-
deed, the Supreme Court has agreed to hear a case next fall to
resolve a circuit split on the availability of § 2255(e) savings
clause relief for statutory interpretation claims. See *Jones v.
Hendrix*, 8 F.4th 683 (8th Cir. 2021), *cert. granted*, No. 21-857,
2022 WL 1528372 (U.S. May 16, 2022). But we need not hold
this appeal pending the Court's decision in *Jones*. Nor must
we resolve the difficult choice of law question that often arises
in resolving savings clause cases. See *Chazen*, 851 F.3d at 864–
86 (Barrett, J., concurring). Under our *Davenport* framework,
Mangine cannot prevail.

B

Mangine cannot clear *Davenport*'s third prong because he
cannot show that his ineligibility for discretionary § 3582(c)(2)
relief constitutes a miscarriage of justice. Our case law has not
fully fleshed out what constitutes a miscarriage of justice in
the context of our *Davenport* savings clause framework. But
we do have a few guideposts that provide sufficient direction
for resolving Mangine's appeal.

"We start, of course, with the statutory text" of the savings
clause. *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). Con-
gress has made clear that post-conviction relief through the
savings clause is available only to a prisoner "test[ing] the le-
gality of his detention." 28 U.S.C. § 2255(e).

Our case law also provides guidance. Take, for example, our decision in *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), where we surveyed Supreme Court decisions and our own precedent setting forth the contours of the miscarriage of justice standard. See *id.* at 627–30. We held that Luis Narvaez suffered a miscarriage of justice when the court wrongly designated him a career offender under the then-mandatory Guidelines. The impact of the error was clear: the misclassification "illegally increased [his] sentence approximately five years beyond that authorized by the sentencing scheme" and therefore went to the "fundamental legality of his sentence" and "constitute[d] a miscarriage of justice." *Id.* at 630.

But an error in a career offender designation does not automatically amount to miscarriage of justice in the context of the savings clause. Consider, for instance, a circumstance where, as we saw in *Millis v. Segal*, the only consequence of an error was that the defendant "received a career offender sentence only in name, not effect," and so "he suffered no miscarriage of justice from that designation" under a mandatory Guidelines system. 5 F.4th 830, 835 (7th Cir. 2021). The district court there imposed a sentence well below the career offender range and indeed at the bottom of the range that would have applied without regard to the designation. We saw no miscarriage of justice because the errant designation had no impact on the actual sentence. See *id.* at 836–37. Any contrary conclusion, we emphasized, would amount to an elevation of form over substance. See *id.* at 837.

We have similarly determined that a misclassification as a career offender does not constitute a miscarriage of justice for purposes of *Davenport* under an advisory Guidelines system, even if the error affected a defendant's Guidelines range. This

is because the district court still had to "make an independent determination of whether a guideline sentence would comport with the sentencing standard set forth in 18 U.S.C. § 3553(a)." *Hawkins v. United States*, 706 F.3d 820, 823, *supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013). And an error that results only in "a sentence that is well below the ceiling imposed by Congress whether directly or by delegation to the Sentencing Commission" cannot "be considered a 'miscarriage of justice' that can be collaterally attacked, just because the judge committed a mistake en route to imposing it." *Id.* at 824–25.

We have a hard time seeing a Guidelines error at sentencing that did not manifest itself in an unlawful sentence as amounting to a miscarriage of justice for purposes of the third prong of our *Davenport* test. As we put the point in *Hawkins*, a miscarriage of justice occurs upon a showing of a statutory error resulting in "the judge impos[ing] a sentence that he had no authority to impose … since the consequence for the defendant in such a case is 'actual prejudice'—an 'injurious effect' on the judgment." 724 F.3d at 917.

Mangine does not meet this standard. It is undisputed that his designation as a career offender is not what drove his sentence on the narcotics and felon-in-possession convictions. With or without the designation, his Guidelines range for those offenses would have been 360 months to life. Mangine, in short, did not receive "far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense." *Narvaez*, 674 F.3d at 629. We cannot say he suffered a miscarriage of justice.

Mangine begs to differ. To his credit, he acknowledges that the erroneous career offender designation may not have

affected his original sentence. But he sees the error as affecting him today by rendering him ineligible for discretionary sentence relief under 18 U.S.C. § 3582(c)(2). Relief is available under § 3582(c)(2) "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." If there has been such a reduction in the Guidelines range, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

By his own account, Mangine's path to a sentence reduction under § 3582 involves two steps: a court must first relieve him of the career offender designation and then, in separate proceedings, afford sentencing relief. But even if he prevails at step one, he may well fail at step two. See 18 U.S.C. § 3582(c)(2) (specifying that "the court *may* reduce the term of imprisonment" if the Guidelines range has been subsequently lowered) (emphasis added); see also *United States v. Hall*, 600 F.3d 872, 875 (7th Cir. 2010) ("The district court has substantial discretion in adjudicating sentence-reduction motions under § 3582(c)(2).").

Being excluded from this two-step path to relief—dependent as it is on predictions about the exercise of judicial discretion—is not a miscarriage of justice. Mangine is challenging his sentence as unlawful not in the sense that "it must be nullified, but only that, were he correct in calling it a miscarriage of justice, it would have to be reconsidered." *Hawkins*, 706 F.3d at 825. Much as we recognized in *Hawkins* that "[i]f we

ordered resentencing, the judge could reimpose the identical sentence," *id.*, here, the sentencing court could determine that the § 3553(a) factors militated against § 3582(c)(2) relief.

In the end, we see Mangine's two-step path to sentencing relief as too indirect to call the district court's denial of his § 2241 petition or his present circumstances a miscarriage of justice. To put the observation in statutory terms, Mangine is not claiming that the imposed 360-month sentence for his crimes is unlawful. So he is not "test[ing] the legality of his detention," 28 U.S.C. § 2255(e), and did not suffer a miscarriage of justice through his misclassification as a career offender.

The Sixth Circuit's decision in *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016), which Mangine directs our attention to, is not to the contrary. In *Hill*, the Sixth Circuit concluded that § 2255(e) savings clause relief was available for a prisoner who was miscategorized as a career offender. This misclassification had two consequences. *First*, the misclassification changed his sentencing range at a time when the Guidelines were mandatory. See *id.* at 599 ("[H]ad the career-offender enhancement been properly considered … the sentencing court would have been required to impose a sentence within a lesser range."). *Second*, this misclassification also "wrongly render[ed]" the defendant "ineligible" for § 3582(c)(2) relief. *Id.*

It was the combination of these two consequences of the wrongful designation, the Sixth Circuit emphasized, that comprised the miscarriage of justice. See *id*. *Hill* never indicates that ineligibility for discretionary sentencing relief by itself would have been enough to allow for § 2241 relief.

Mangine's situation is different. Yes, the Supreme Court's decision in *Mathis* shows that he should not have been classified as a career offender. But that misclassification did not result in his Guidelines range being miscalculated at the time of his sentencing. Had that happened, Mangine would have suffered a miscarriage of justice under our case law. See *Narvaez*, 674 F.3d at 627. But ineligibility for a discretionary § 3582(c)(2) sentence reduction alone is insufficient to invoke the protections of the savings clause.

For these reasons, we AFFIRM.